BOLIN, Judge.
Mrs. Rachel Henderson, joined by her husband, brought suit against Pak-A-Sak Service Stores, Inc., and its insurer seeking damages for injuries and subsequent medical expenses caused when a bottle fell from the Pak-A-Sak refrigerator, broke and cut the foot of Mrs. Henderson. Following trial the lower court, with written reasons, gave judgment for plaintiffs in the respective amounts of $1500 and $500, and defendants have appealed. Plaintiffs answered the appeal asking for an increase in the awards.
Plaintiffs first predicate their claim on defendant store maintaining its refrigerator in a condition calculated to cause products stacked on the shelves to fall easily therefrom upon opening the door, which should have been anticipated and corrected and which negligence was the proximate cause of Mrs. Henderson’s injuries. As to these circumstances plaintiffs urge the applicability of the doctrine of res ipsa loqui-tur and the resultant duty of defendant to absolve itself from the inference of negligence.
Alternatively plaintiffs alleged specific acts of negligence on the part of Pak-A-Sak itemized in their petition as follows:
“a. Stacking beer bottles or containers too close to door opening used used by customers;
“b. Failing to provide the refrigerator box or container with a guard or other device to prevent contents from easily falling out when the door opens;
“c. Failing to maintain a refrigerator or container sufficiently sturdy to> prevent merchandise stored therein from falling from slight jar of opening of the door;
“d. Failure to maintain proper supervision of the products stored therein, in a safe manner.”
Defendants deny any specific acts of negligence and likewise plead alternatively the doctrine of res ipsa loquitur against plaintiffs. They further plead in the alternative that Rachel Henderson was guilty of contributory negligence in failing to' exercise care in removing the milk from the refrigerator and thereby allegedly knocking the beer bottle to the floor.
It is admitted Mrs. Henderson had gone into Pak-A-Sak to purchase a loaf of bread and a carton of milk and as she opened the refrigerator to reach for the milk a quart beer bottle fell to the floor, broke and severely lacerated her foot. Immediately thereafter a customer obtained towels, bound the foot which was bleeding badly and found a chair for Mrs. Henderson who had turned quite pale. Someone then notified plaintiff’s daughter who, having driven her mother to the store, was awaiting her in the car. The latter came into the store and with some assistance got Mrs. Henderson into her car and drove her to a clinic where she was given emergency treatment by Dr. Happen. She was then taken home. Apparently there were no witnesses to the occurrence except plaintiff who testified only that she was accustomed to go into the store about twice a week for milk; that she knew where the cartons of milk were kept; that she approached the refrigerator at an angle, because of the arrangement of the aisles, and immediately after she opened the refrigerator the bottle fell on her foot and cut her; that she had not purchased the loaf of bread nor had she had time to obtain the milk before the accident.
*146 Kelly McBride, manager of the store, described the refrigerating cooler in detail, and a rough sketch was filed in evidence. The bottom shelf of the unit was approximately two feet from the floor, there being three shelves above this. There were four doors in the front of the cooler, each about four feet high and an estimated two and one-half feet wide, constructed of glass, with metal frames. The handle of the door in question was on the right side, as one faced the box, and hinged on the left. Mr. McBride and Herman Gay, another employee, testified that in this refrigerating unit on the front of the shelves there were knobs, about the size of a person’s thumb and one inch in height, which were spaced approximately six inches apart. Both of them testified this unit was filled from the back, and it was customary to replenish the shelves in the morning again about 4:30 p. m., and again about 9:30 p. m. They were both positive the shelves had been replenished about 4:30 p. m. that day by someone, but neither of them knew who had performed this task, both stating they did not recall doing it themselves, and it was possible a third man, who had gone off duty, had done it. Mr. McBride also testified it was customary, after filling the shelves, to go around to the front and see that the merchandise was in order; but admitted on cross-examination there were exceptions to this inspection procedure when someone was at the counter to be waited on. McBride denied the refrigerating unit would vibrate when the door was opened, but admitted it would vibrate if the door were slammed as it was closed.
From all the circumstances and the testimony the lower court drew the following conclusion:
“In light of this testimony, we can only conclude that the bottle of beer was resting on the edge of the shelf and against the door of the refrigerating unit, and as Mrs. Henderson opened the door, the bottle fell to the floor and on her foot.
“A bottle of beer, identified by Mr. McBride as similar in size to that which fell from the refrigerator on Mrs. Henderson’s foot, was filed in evidence. A measurement was made of this bottle at the bottom, and it was found to be 31/4 inches.
“From this evidence we conclude that the bottle of beer was either pushed forward to this position from the rear as the shelf was replenished by the employee, or that it was shifted forward to this position from the vibration of the unit from the slamming of the door on other occasions. In either case, the fact that the bottle of beer was resting against the door was due to the failure of the shelf on which it was placed to have a restraining strip or ridge to keep it from sliding forward. It is true that there were knobs on the edge of the shelf, but they were six inches apart, arid the bottle of beer, being 3% inches in width, these knobs were totally ineffective. Apparently the shelf of the refrigerating unit was constructed for use in stocking merchandise in packages with a base diameter in excess of six inches, or in containers other than glass or other substances that would not slide in the vibration of the box upon the doors being closed.
“But, regardless of the reason for the construction of this type of shelf, or whether an employee of the store shoved the bottle against the door, or the slamming of the door caused it to make the bottle slide forward against the door, we think the defendant, Pak-A-Sak, negligent in placing a bottle of beer of this size on this shelf, knowing that there was no restraining strip or barrier to keep it from sliding forward against the door, and knowing that the unit did vibrate when the door was slammed; and this was the proximate cause of the accident.”
It is clear to us the trial judge based his decision upon the conclusion that plaintiffs *147 had proved specific acts of negligence, fault and lack of due care under LSA-C.C. Arts. 2315 and 2316. From our review of the record we think the evidence substantiates such a finding.
We are aware of the jurisprudential rule that a plaintiff prosecuting a tort action under the aforementioned Civil Code Articles must prove his case with certainty and by a preponderance of the evidence. While it is equally well established that a store-keeper is not the insurer of the safety of his customers, nevertheless he owes a business visitor the duty of exercising reasonable or ordinary care for his patron’s safety commensurate with the particular circumstances involved.
Although, plaintiff in such an action is not required to prove every detail of the alleged acts of negligence, he is required to offer sufficient evidence from which the trier of facts can reasonably reach a conclusion. From the evidence of this case we think the district judge was fully justified in concluding plaintiffs had established negligence on the part of the store-keeper, and that such finding was not based on unwarranted assumptions or speculation.
In rendering judgment for plaintiffs the lower court did not rely for its ruling on the doctrine of res ipsa loquitur, and for that reason we pretermit any detailed discussion on this theory except to answer certain claims advanced by appellants in their brief. Able counsel for appellants contend the very recent case of Pilie v. National Food Stores of Louisiana, Inc., La., 158 So.2d 162, is controlling on the issues presented herein. In the cited case, where a customer in a retail grocery store was injured by a Coca Cola bottle which fell from a display, plaintiffs relied on the applicability of the doctrine of res ipsa loquitur. Under the facts and circumstances of that case the court of appeal and the Supreme Court held the doctrine not to apply.
Since both the lower court and this court base their decisions in the instant case on the well-pleaded and proved acts of negligence there is no need to rely on the doctrine of res ipsa loquitur. Consequently the ruling in the Pilie case, supra, is inapposite to the case here under consideration.
Defendants’ allegations of contributory negligence on the part of Mrs. Henderson were dismissed by the lower court as illogical in view of the fact the only act performed by her was to open the refrigerator door. We likewise find no error in this portion of the judgment appealed from.
The last matter for consideration is the question of quantum. As is customary in such cases, plaintiffs assert the awards are inadequate and defendants just as strenuously contend they are excessive and should be reduced. The evidence shows Mrs. Henderson was examined or treated by one general practitioner, a neurosurgeon and an orthopedic surgeon of Shreveport. While she suffered rather severely, her injuries were mostly temporary. In any event we think the evidence supports the award of $1500 and in line with the recent case of Gaspard v. LeMaire (Sup.Ct.1963) 158 So. 2d 149, interpreting LSA-Civil Code Art. 1934, subd. 3, we find no abuse of discretion by the trial judge.
Mr. Henderson was awarded $372.07 for proved medical expenses and $127.93 for future medical expenses. As the record supports such a finding, this portion of the judgment will also be affirmed.
Accordingly, the judgment appealed from is affirmed at appellants’ cost.
Affirmed.
GLADNEY, J., dissents with written reasons.