**BABCOCK, Plaintiff-Appellee, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3695. Decided July 21, 1944.

Tussing & Lane, Columbus, for plaintiff-appellee.

Carl H. Valentine, E. W. Mansler, Columbus, for defendant-appellant.

## OPINION

BARNES, P. J.

The above-entitled cause is now being deiermined as an error proceeding on defendant's appeal on questions of law from the judgment of the Common Pleas Court of Franklin County, Ohio.

Plaintiff's petition was filed September 8, 1942, and therein he sought damages against the defendant for claimed injuries, alleged to have been caused through the negligence of the defendant.

In substance, plaintiff sets out in his petition that he was a real estate salesman, operating under and by virtue of his employment by William P. Zinn & Company, real estate brokers, located in Columbus, Ohio. The defendant was a New Jersey corporation, and at the times mentioned in the petition was duly qualified and doing business in 'the state of Ohio and in Franklin County. The petition further alleges that at the times mentioned the defendant was and is the owner of certain real estate in the City of Columbus, upon which a two-story frame dwelling house was located and known as 1091 Kelton Avenue, Columbus, Ohio.

It is further alleged that the defendant constructed, maintained and suffered to exist in the aforesaid dwelling house a certain stairway of wooden steps running from the first to the second floor of said house and consisting in part of a flight of twelve steps, three feet in width, bounded on either side by bare wall space, without handrail and so located that during the daylight season they were dark and not clearly visible; that the width of the tread of said steps was approximately 10 inches except the third step from the top which was approximately 10 ⅝ inches in width.

Plaintiff further alleges that he was on the premises on the 20th of May, 1942, as an invitee by reason of a sales contract between the defendant and William P. Zinn & Company; the further allegation is made that on said "May 20, 1942, at approximately 11:30 o'clock A. M. the plaintiff, while in the process of showing said premises known as 1091 Kelton Avenue, Columbus, Ohio, to a prospective purchaser thereof, and while on said premises at the invitation of defendant, attempting to walk from the second floor to the first floor of said premises, stepped from the aforesaid third step which was wider than the other steps as aforesaid and attempted to step on the fourth step but by reason of the excessive width of said third step his foot was forced partially over and beyond the fourth step so that when his weight was placed on his foot in contact with the fourth step his footing became insecure and he was precipitated forward through the air down the entire set of steps to the landing below, thereby severely bruising and injuring the plaintiff over various parts of his body", etc.

There is the further allegation in the petition relating to the nature and extent of injuries and the attending results. The petition contains this additional allegation: "Plaintiff says that his aforesaid injuries and damages were directly and proximately caused by the negligence of the defendant in the following particulars:

"(1) Defendant constructed, maintained and suffered to maintain said stairway with a defective step and that the tread thereof was 5/8 of an inch wider than other treads as hereinbefore set forth.

"(2) Defendant constructed, maintained and suffered to maintain said stairway wihout handrails; and

"(3) Defendant constructed, maintained and suffered to maintain said stairway without adequate and proper lighting as aforesaid."

The prayer of the petition asks damages in the sum of $8592.88. During the trial plaintiff stipulated that the word "constructed" wherever used might be eliminated and not considered as an allegation in the petition.

Defendant filed a motion and afterwards a demurrer, both of which were overruled. We are furnished with copies of the Court's opinion in overruling the demurrer and therein it is clearly discernible that the Court was in serious doubt as to the correctness of his conclusions. Thereafter, defendant filed an answer containing four defenses. A demurrer was filed to the second, third and fourth defenses and sustained. Thereafter defendant filed an amended answer. The second defense was attacked by motion and sustained.

On July 6, 1943, the defendant filed a second amended answer. The first defense admitted certain formal allegations of the petition and denied all others. The second defense in substance averred that if the plaintiff was injured in the manner set out in this petition, such accident and injuries were due to plaintiff's fault and negligence.

This cannot be said to be an alternative plea of contributory negligence, but under its language would be an averment that any injuries received by plaintiff were due entirely to plaintiff's fault.

This defense really added nothing to the first defense for the reason that under a general denial the question of plaintiff's fault would be an issue independent of any special averment.

The case was very earnestly contested and numerous claimed errors are set out in the assignment of errors which occurred during the trial. The jury returned a verdict for the plaintiff in the sum of $897.00. Counsel for defendant maintained his record throughout, first by moving for directed verdict at the close of plaintiff's evidence, renewed at the close of all the evidence. and after verdict by motion for judgment notwithstanding the verdict; also, a motion for a new trial.

From the colloquy between the Court and counsel during the trial and further statements made in overruling motion for judgment notwithstanding the verdict and motion for new trial, we again discern that the trial court was laboring under considerable doubt as to the correctness of his determination. In a measure he based his final determination on a question of comity between the courts.

Within due time counsel for appellant filed a notice of appeal on questions of law, whereby the case was lodged in our court.

The assignments of error contain 15 separately numbered

and stated specifications of error. Many of these involve identical questions. The major question which concerns us is the sufficiency of the petition and if good against demurrer, whether or not the evidence establishes negligence which was a proximate cause of the accident and resultant injuries.

We have no difficulty in determining that the plaintiff did fall and that he suffered injuries thereby. The only evidence bearing upon the question as to what caused plaintiff to fall is that of plaintiff himself. This evidence is very brief and is found on page 90 of the record. Previously plaintiff had testified that on the day in question he was showing the premises to Mrs. Rose Lascola, a prospective purchaser; that they first went through the three rooms downstairs and then went up the stairway to the second floor; that at the top of the stairs he snapped on an electric light which was in the center of the hallway but not directly in front of the stairs. After examining the three bed rooms upstairs they proceeded to go down the stairway. Mrs. Lascola was in front and the plaintiff, Mr. Babcock, followed immediately behind her. We now quote the pertinent part of page 90 in full:

"Q. Now, tell the jury how you were walking with reference to walking fast or slow?
"A. Well, I was walking slow, it was necessary for me to walk slow, Mrs. Lascola is a rather large woman, and she was going slowly, so there was no other way I could go.
"Q. Now, as you walked down these steps, tell the jury just what happened.
"A. I took three steps down and attempted to take the fourth step, but my foot instead of lighting on the ball caught back behind it, in the arch, my feet were knocked out from under me and I fell the rest of the way."

Thereafter follows the testimony as to his fall down to the landing, shortly thereafter leaving and taking Mrs. Lascola home, and the subsequent development of a hernia requiring an operation, etc

On June 3rd the defendant returned to the premises and made a measurement of this stairway. The measurements are as follows, starting from the top:

Step No. 1 _____ 9-⅞ inches
Step No. 2 _____ 10   inches
Step No. 3 _____ 10-⅝ inches
Step No. 4 _____ 10   inches
Step No. 5 _____ 9-⅞ inches
Step No. 6 _____ 9-⅞ inches
Step No. 7 _____ 9-¾ inches

Step No. 8 _____ 9-¾ inches
Step No. 9 _____ 10 inches
Step No. 10 _____ 10 inches
Step No. 11 _____ 9-¾ inches
Step No. 12 _____ 9-⅞ inches

He also gave the measurements of the risers as follows, all 7 inches except:

No. 9 _____ 7-¼ inches
No. 10 _____ 7-⅛ inches
No. 11 _____ 7-⅛ inches
No. 12 _____ 7-¼ inches

The width of the stairs was given as approximately three feet. There were bare walls on either side and no handrail. In further discussion we need to refer to only the first, second, third and fourth steps from the top. The tread on the first was 9-⅞ inches; on the second, 10 inches; on the third, 10-⅝ inches; on the fourth, 10 inches. There is no direct evidence in the record showing that plaintiff in going up or down the stairs was conscious that there was any difference in the width of the treads of the steps. His foot was very large, and his shoe measured over all between 12¼ and 12½ inches. The defendant had owned the property for approximately 10 years. The same was taken in a foreclosure proceeding. During the entire period of their ownership the stairway had not been altered. By reason of this period of ownership the defendants would be charged with knowledge of its condition. There was no covering on the steps. This at once brings us to the question as to whether or not a thead ⅝ of an inch wider than the tread above and below this third step would be maintaining a negligent condition. We do not think so. Exactness to a fraction of an inch is not required in the construction or maintenance of residences. It is a matter of common knowledge that going up and down a stairway is more of a hazard than walking on a level floor. Even if for the moment it should be conceded that it was negligent to maintain this step the tread of which was ⅝ of an inch wider than the others, we still have the question whether or not the evidence supports the theory that the 10-⅝ step was the proximate cause of the accident. To our minds there is no supporting evidence that it was. Paintiff ovestepped the fourth step. This fourth step was the normal width. The extra ⅝ of an inch on the third step did not overhang the fourth step. The full 10 inches on the fourth step was not in any way affected by the extra ⅝ of an inch on the third step. We can see no reason for the overstepping of the fourth step. Had his heel caught on the third step we could

see some supporting evidence on proximate cause provided there was a negligent maintenance. It is just as important and necessary to show proximate cause as it is to show negligence. We recognize that proximate cause is frequently shown by inference, but we may not draw an inference contrary to evidential facts. We must keep in mind that there is no evidence supporting any inference that the plaintiff at the time he was going up or down had any knowledge of any variance in width of the steps. If a sense of feeling gave him some knowledge of the width of the steps the fact that the third step was ⅝ of an inch wider could not cause him to overstep, but if it had any effect it would tend to cause him to understep. In understepping he might drag his heel, but if he did not drag his heel the natural tendency would be for his foot to be closer to the tread between the third and fourth steps. Every one at some time in their life has made a misstep on a stairway. This is true, whether or not there is a variance in the width of the tread or all are the same. Whatever the cause of this overstepping of step four, we are unable to find any evidence that the extra width of the step 3 was a proximate cause. For the reasons stated, we are forced to the conclusion that there is a failure of proof either to show negligence or proximate cause. Under this situation we must enter final judgment for defendant, and it becomes unnecessary to pass upon the remaining errors for several reasons: First, under several of the assignments the identical question is being presented as the one already determined. Others pertain to claimed errors arising in the trial which would only warrant an order for new trial if we should find such claimed errors well grounded. However, it is necessary to determine the claimed negligence of failure to provide a handrail, or as to the insufficiency of the lighting. Under provisions of the Ohio Code certain types of buildings are required to have handrails. This statutory requirement does not cover residences such as the one involved in this case. Judge Randall in deciding the demurrer to the petition, discusses this question and refers to the following principle.

"Since the statute requires handrails in stairways of certain types of buildings and does not require them in buildings of the type here involved, we might well conclude that the principle of inclusio unius est exclusio alterius might well apply, indicating no common law duty to include handrails in a single residence property, especially in the absence of a defect in the stairway itself."

In American Jurisprudence, Vol 38, Sec. 102, near the bottom of the section, we find the following:

"Therefore it is held as a matter of law that the absence of handrails from the ordinary interior stairway, walled on both sides, is not actionable negligence."

In support of the text there is cited the case of Wallman v. Maki, 163 Minn., 352, 204 N. W. 25.

Under the facts in the instant case we would have no difficulty in determining that the kind and character of light at the head of the stairs could not be attributable to the defendant. The premises were occupied by a tenant and they would have exclusive charge of the lighting within the interior of the premises. The claim is made that the light at the head of the stairs was of small voltage, probably 25 watt. In the absence of any showing to the contrary, this ceiling light would be under the absolute control of the tenant.

The trial court, and particularly the Judge passing on the demurrer, only referred to the handrail and inadequate lighting as a circumstance to be considered in connection with the alleged negligence in the maintenance of the steps.

If we were considering the remaining claimed errors we would find only one prejudicial, and that is the evidence attempted to be introduced as to the listing of the property by the defendants with Zinn & Company for sale. One of the elements set out in plaintiff's petition was that he was an invitee. This was denied by the answer. In support of this allegation he did present in evidence what we will speak of as a base contract between the defendant and William P. Zinn & Company. This base contract, very lengthy, did not cover any specific property, but very fully set out the terms of the contract when and if the defendant listed with William P. Zinn & Company any property for sale. The provision for listing is set out under what is numbered Paragraph 1 on the first page of this base contract and reads as follows:

"1. The Owner will furnish the Broker with a specific listing, on form furnished by the Owner and executed by its duly authorized representative, describing each separate property which is to come under the terms of this agreement, which listing will set forth the sale price which the representatives of Owner will recommend to its Finance Committee in the event an offer for the property is received on satisfactory terms. Such form will further provide, and it is expressly understood and agreed that such listing is subject

to prior sale and subject to change at any time. It is agreed by both parties hereto and expressly understood by the Broker that only the properties specifically listed with the Broker by the Owner shall come under and be subject to the terms of this agreement. The Owner reserves the right to withdraw any property so listed at any time by written notice to the Broker, and upon such withdrawal, the withdrawn property shall no longer be subject to any of the terms of this agreement."

It at once appears that in order to make this contract referable to the property mentioned in the instant case, there must have been a listing by the defendant with the William P. Zinn & Company. In the trial plaintiff probably through an inadvertence found that he was not in position to present any written listing. A representative from the Zinn & Company was called as a witness and this witness at the time called had charge of sales of residence properties and testified that at the time of the alleged accident he did not have any connection with sales of residence properties, further that he knew nothing about the claimed listing. He testified further that he had made diligent search at the office of Zinn & Company and that he was unable to find any such list. He testified that at the time in question Mr. Worley had charge of the sales of residence properties, and that he was no longer connected with Zinn & Company. Miss Irene Frazer was called as a witness and she testified that at the time Mr. Worley was connected with Zinn & Company she was his private secretary. She was called and excused twice by reason of the trial court wanting to examine the base contract which had been taken back to the office of Zinn & Company under an agreement to furnish a copy. The copy had not been returned. The trial court correctly understood the rule and stated that if the base contract made specific provisions for listing, that a listing executed by the defendant company in accordance with the contract would be the best evidence. The record clearly discloses that after search the written listing was not found in the office of Zinn & Company.

Counsel for plaintiff evidently had not anticipated this difficulty and had not taken the essential steps through which he might have obtained a copy of the listing from the defendant. He was struggling to present secondary evidence to which objections were made, and the Court recognized the correctness of the objections as made by counsel for the defendant. It was only after the trial court was convinced that plaintiff at the time could not present the written listing that he yielded the point and overruled the objection as to the questions propounded to the witness, Miss Frazer. After exam-

ining this evidence very carefully we do not believe that the ground was properly laid for secondary evidence, and even if it was her testimony was not of such a character to be admissible. The rule is well recognized that where writing is pertinent to a question under consideration, the writting itself is the best evidence. Where the writing is lost and cannot be procured, secondary evidence may be introduced as to the substance of the writing. We do not think that the plaintiff had exhausted every avenue through which the listing contract or a copy thereof could have been obtained. Counsel in the preparation of his case before trial should have been sure that all evidence essential to the proof of his case was available. Such an effort would have disclosed that the claimed listing could not be found in the hands of Zinn & Company. Then and there he could and should have taken the next logical step of asking for a copy from the defendant. If such effort did not bring forth the copy of the claimed listing, then there would be ground for the introduction of secondary evidence. Any witness who had seen the contract and knew of its existence could testify as to its contents. This was not the inquiry that was made of Miss Frazer. The question presented to her was the following:

"Q. Do you know whether or not during the period of '42 that property was listed as a property for sale with the William P. Zinn · & Company by The Prudential Insurance Company?"

Objection was interposed and overruled. The answer of the witness was, "It was". That was all the testimony on the question of listing. The answer falls short of the requisites in many particulars: First, the answer was a conclusion; second, it would not be sufficient to show that the property was listed sometime during 1942. It would be necessary to show that the listing was prior to the date of the accident, which was May 20, 1942. The fact that a sale was made and commission paid to Zinn & Company might be a circumstance supporting a listing, but the sale was made in October or November following the accident, and this would raise no inference that the listing preceded the date of the accident. The argument is also made that the plaintiff would not have taken his prospective purchaser to view the premises under direction of William P. Zinn & Company, unless the listing had been made with Zinn & Company prior to that time. This is a reasonable inference, but it is not requisite proof.

The presentation of the evidence of listing was essential, and without it plaintiff's case would fail in that there would

be no evidence that he was an invitee. Unless plaintiff was an invitee he would have no right to recover.

This claimed error requires a reversal as a matter of law for failure of proof upon a vital issuable question.

We are constrained to the view that plaintiff's petition must be dismissed and costs adjudged against the appellee. Entry may be drawn accordingly.

GEIGER, J. concurs.

HORNBECK, J. dissents:

I believe there was an issue as to the negligence of defendant, and also, though a closer question, that the plaintiff had a right to go to the jury upon the claim that the real estate was listed with Zinn & Company on the day of the accident.