ALBA CELENIA TORRES, demandante y recurrida, *v.* METRO-
POLITAN SCHOOL OF COMMERCE, ETC., ET AL., demandados
y recurrentes.

*Números:* R-64-22, R-64-25 y R-64-27     *Resueltos:* 6 de octubre de 1964

*F. Fernández Cuyar* y *Amancio Arias Cestero,* abogados de Eduardo Álvarez; *Jorge Luis Suárez,* abogado de Metropolitan School of Commerce y/o Pablo J. Quiñones; *Martín Almodóvar,* abogado de Alba Celenia Torres.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Se condenó solidariamente al dueño de un edificio, Eduardo Álvarez y a la arrendataria del tercer piso de dicha pro-

piedad, Metropolitan School of Commerce y/o su director Pablo J. Quiñones, al pago del 50% de los daños y perjuicios sufridos por la recurrida, Alba Celenia Torres, con motivo de su caída al bajar las escaleras del referido piso al piso segundo del edificio. El juez de instancia determinó que:

"1.     .     .     .     .     .     .     .     .

"2. . . . El contrato de arrendamiento existente entre la institución docente y el casero *no incluía la escalera de acceso al referido tercer piso. El instituto, sin embargo, pagaba un conserje que hacía la limpieza del trozo de escalera que llevaba del segundo al mencionado tercer piso.*" (Énfasis nuestro.)

"3. Dicho trozo de escalera es de concreto armado con escalones de 10″ de anchura, cubiertos de lozetas, la anchura de la escalera es de aproximadamente cuatro pies, teniendo ésta sólo un pasamanos hacia el exterior. En el lado opuesto sólo había la pared del edificio sin ningún asidero para ser utilizado por las personas que discurrían por ese lado. Sin embargo, las porciones de la escalera que conectaba el primer y segundo piso tenían pasamanos o barandillas a ambos lados."

"4.     .     .     .     .     .     .     .     .

"5.     '.     .     .     .     .     .     .     .

"6. El día 9 de noviembre de 1959, la demandante, a eso del medio día, visitó el instituto demandado con el propósito de conseguir la entrega del diploma acreditativo de los estudios terminados, el que le era exigido por un patrono potencial con quien gestionaba empleo. Vestía un traje de falda muy ceñida, que debía restringir el libre movimiento de sus piernas y unos zapatos de taco fino y muy largos. Mientras bajaba del tercer piso al segundo en ejecución de su gestión lo hacía *por el lado del referido trozo de escalera en donde no había un pasamanos o barandilla. Tomó este curso obligada o inducida por órdenes o normas de la escuela, al efecto de que se bajara por el lado derecho de esa escalera.* En un punto de la misma cayó y rodó hacia abajo a lo largo de seis escalones."

"    ".     .     .     .     .     .     .     .

"10. *El tribunal no se ha convencido de que la escalera estuviera mojada en el punto en donde se inició la caída de la recla-*

*mante, por lo tanto resuelve el conflicto de la prueba sobre este extremo en forma negativa.* Concluye, sin embargo, que este accidente fue producido por una combinación de circunstancias a saber:

    (1) La superficie lisa de las losetas que cubrían la escalera.

    (2) el tipo de zapatos que utilizaba la demandante.

    (3) el traje que tenía puesto la demandante.

    (4) la falta de un pasamanos o de una barandilla en el lado de la escalera que utilizó la reclamante.

"Aunque las losetas no eran de por sí esencialmente resbalosas, sin embargo, su superficie lisa no brindaba mucha tracción a las pisadas, lo que hacía más posible el resbalar sobre ellas cuando se caminaba en las condiciones en que lo hizo la demandante. De haber existido un segundo pasamanos en el lado de la escalera correspondiente a la pared del edificio, la demandante habría podido evitar la aparatosa caída a lo largo de seis escalones." (Énfasis nuestro.)

"11. La demandada Metropolitan School of Commerce, ni su director nunca requirieron del arrendador la instalación en la escalera de acceso al tercer piso de un pasamanos o barandilla adicional, siendo éste útil y necesario como medida para evitar accidentes a los muchos estudiantes que usaban este acceso. Tampoco tomó medidas para cubrir esta necesidad de alguna manera."

A base de estas determinaciones, concluyó el tribunal de instancia que los recurrentes incurrieron en culpa o negligencia, a la cual se le atribuye el 50% de la responsabilidad por el accidente, debido a *"la omisión del arrendador de proveer una baranda o pasamanos en el lugar del accidente, que fue uno perfectamente anticipable, la orden o norma del instituto demandado que obligó o indujo a la demandante al uso del lado de la escalera desprovista de baranda o pasamanos, y su omisión al no hacer arreglos con el arrendador para proveer la necesaria baranda en cuestión.* Resulta lógica la inferencia al efecto de que tales circunstancias actuaron concurrentemente con la negligencia contributoria de la demandante, como causas próximas todas que produjeron

el hecho desgraciado que dio margen al litigio presente." (Énfasis nuestro.)

Los recurrentes sostienen que la sentencia es errónea, en síntesis, porque la falta del pasamanos por sí solo no pudo ser la causa de la caída, y porque no hubo evidencia de que las losetas estuvieran gastadas o hubiesen sido pulidas o fueran excesivamente lisas o esencialmente resbalosas y porque los casos citados por el tribunal de instanccia en apoyo de su determinación en efecto son claramente distinguibles.

■ Es evidente que el tribunal de instancia determinó que los recurrentes incurrieron en culpa o negligencia que dio lugar al accidente en cuestión debido "a la omisión de proveer una baranda o pasamanos en el lugar del accidente". A nuestro juicio tal omisión de por sí no constituye prueba de negligencia a menos que tal omisión constituya una violación de un estatuto u ordenanza o cuando los escalones de la escalera han sido construidos o conservados en tal forma que puedan considerarse como un peligro para las personas que la usan. *Flynn* v. *Arcade Investment Co.*, 91 N.W.2d 113 –115 (Minn. 1958); *Jeske* v. *George R. Wolff Holding Co.*, 83 N.W.2d 729 (Minn. 1957); *Horvath* v. *Chestnut St. Realty Co.*, 144 S.W.2d 165 (Mo. 1940); *Pruitt* v. *Timme*, 349 P.2d 4–6 (Okl. 1959); *Bizich* v. *Sears, Roebuck & Co.*, 139 A.2d 663 (Pa. 1958); *Anderson* v. *Younker Bros. Inc.*, 89 N.W.2d 858 (Iowa 1958); *Ullrich* v. *Kintzele*, 297 S.W.2d 602 (Mo. 1957); *Opelika Montgomery Fair Co.* v. *Wright*, 52 So.2d 404 (Ala. 1950); *Babcock* v. *Prudential Ins. Co. of America*, 60 N.E.2d 495 (Ohio 1944); *Mammana* v. *Easton Nat. Bank*, 12 A.2d 918 (Pa. 1940).[1]

En este caso el tribunal de instancia no señaló ninguno de los factores adicionales indicados que requiriesen la instalación del pasamanos omitido.

---

[1] Cf. *Just* v. *Moreno*, 63 D.P.R. 673 (1944).

Señala el tribunal que uno de los factores que "produjo el accidente" fue "La superficie lisa de las losetas que cubrían la escalera", añadiendo que "Aunque las losetas no eran de por sí esencialmente resbalosas, sin embargo, su superficie lisa no brindaba mucha tracción a las pisadas, lo que hacía posible resbalar sobre ellas cuando se caminaba en las condiciones en que lo hizo la demadante".

Es evidente que las losetas de la escalera en cuestión no eran resbalosas. El hecho de que su superficie lisa no brindase mucha tracción de manera que fuera posible resbalar en ellas al caminar bajo las condiciones especiales de la recurrida, o sea con "un traje de falda muy ceñida que debía restringir el libre movimiento de sus piernas y unos zapatos de taco fino y muy largos", no constituye el grado de peligrosidad que implique negligencia de parte de los recurrentes en el cumplimiento de sus obligaciones para con las personas que visitan o circulan por la propiedad en gestiones apropiadas (*licensees*) máxime cuando la situación existente en este caso tenía que ser conocida por la recurrida por las muchas veces que subió y bajó dicha escalera mientras fue estudiante de la Metropolitan School of Commerce. A los efectos de imponer responsabilidad en casos de esta naturaleza la escalera o sus escalones o ambos deben estar defectuosos por el uso, debido a su deficiente construcción o mantenimiento y ésta debe ser la causa próxima del accidente. *Jaich* v. *Belkin*, 106 N.E.2d 88 (Ohio 1951). No puede concluirse que una escalera esté defectuosa meramente porque sus escalones luzcan usados o lisos por el uso. *Ducharme* v. *Nat. Bank of Lebanon*, 15 A.2d 884 (N.H. 1940); *Lawson* v. *D. H. Holmes Co.*, 200 So. 163 (La. 1941); *Charamis* v. *R. H. Macy & Co.*, 24 N.E.2d 487 (N.Y. 1939); *Rosenthal* v. *Central Garage of Lynn*, 181 N.E. 660 (Mass. 1932); *Walker* v. *F. & W. Grand 5-10-25 Cent Stores*, 137 Atl. 563 (N.J. 1927); *Chapman* v. *Clothier*, 118 Atl. 356 (Pa. 1922). No constituye negligencia el dejar de colocar pasamanos en

una escalera que se ha hecho resbalosa por el uso y esta condición era conocida por la perjudicada. *Stoll* v. *First Nat. Bank of Independence*, 132 S.W.2d 676 (Mo. 1939). Son defectuosas, a los efectos de imponer responsabilidad en estos casos, aquellas escaleras con escalones gastados, rotos, con hoyos, agrietados, sueltos, con clavos o tornillos sobresalientes, o que son de tamaño o forma irregular, muy gastados, lisos como cristal y muy resbalosos. *Wattels* v. *Marre*, 303 S.W.2d 9 (Mo. 1957); *Pritchard* v. *Terrill*, 222 P.2d 652 (Oregon 1950); *McCollum* v. *United Markets*, 80 N.E.2d 29 (Mass. 1948); *Corcoran* v. *United Markets*, 49 N.E.2d 250 (Mass. 1943); *Wik* v. *Sears, Roebuck & Co.*, 15 A.2d 870 (N.H. 1940); *Scott* v. *Rich's*, 171 S.E. 201 (Ga. 1933). Véase, además, 64 A.L.R.2d 398, 487 y 471 y los casos de construcción o diseño defectuoso citados en 25 A.L.R.2d 372, 373.

La escalera de losetas es sumamente común en esta jurisdicción. Concluir que la escalera en este caso era defectuosa por el solo hecho de que sus losetas estaban lisas debido al uso y porque carecía de pasamanos por un costado, y sin demostrarse que hubiese impedimento alguno al uso del pasamanos existente, al extremo de que esa condición constituya prueba suficiente de la negligencia del que la posee o controla, es imponer una responsabilidad injusta e irrazonable sobre los dueños o arrendatarios de viviendas u otros inmuebles.

La jurisprudencia en esta jurisdicción citada por el tribunal de instancia en apoyo de su determinación no es aplicable o es claramente distinguible. En *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956), las circunstancias eran muy distintas pues se trataba de una escalera casi el doble de ancha; los escalones tenían una franja lisa en su borde exterior y estaban mojados y en el momento del accidente estaba siendo usada por otras personas además del perjudicado, de manera que resultaba evidente que éste no tuvo oportunidad

de protegerse con el único pasamanos disponible, cosa que no surge de la prueba en este caso. Se concluyó, además, que la franja de 3 pulgadas de cemento liso al borde de cada escalón constituía una trampa para un huésped de 50 años como lo era el perjudicado en ese caso *debido al hecho de estar siempre mojada.* Posteriormente se instaló un segundo pasamanos y se pusieron alfrombras de goma en los escalones. En *Ramírez v. Hotel Condado,* 68 D.P.R. 953 (1948), *el accidente se debió a un desperfecto en uno de los escalones de una escalera. Se admitió que la escalera estaba defectuosa.* En *Prado v. Quiñones,* 78 D.P.R. 322 (1955), el accidente se debió a que un tablón que servía de pasadizo accidental mientras se efectuaban unas reparaciones, se movió bruscamente, pues estaba suelto, al pasar la perjudicada por él, de manera que aquélla perdió el balance y se cayó de sus pies. En *Ramos v. Carlo,* 85 D.P.R. 353 (1962), el accidente se debió a unos flejes que el demandado colocó en una acera. En *Cole v. Escambrón Development Co.,* 73 D.P.R. 520 (1952), el accidente fue causado por el desplome de un piso de un salón de baile debido a que las vigas que servían de soporte a la plataforma del piso estaban en estado avanzado de deterioro de manera que amenazaban ruina por no poder proporcionar adecuada resistencia a dicha plataforma. En el caso ante nos es evidente que la escalera no adolecía de desperfecto alguno como el que ocasionó el accidente en *Goose,* supra, *Ramírez,* supra, *Prado,* supra, y en *Cole,* supra, y que dicha escalera no fue obstruida por un objeto indebidamente colocado en ella por uno de los recurrentes, como ocurrió en *Ramos,* supra.

En *Weber v. Mejías,* 85 D.P.R. 76 (1962), se responsabilizó al dueño de un edificio por los daños sufridos por una señora que sufrió una caída en una escalera exterior de dicha propiedad. Este caso es también claramente distinguible del que nos ocupa. Contrario a la situación en el caso ante nos, en *Weber,* supra, la escalera estaba totalmente desprovista de pasamanos; era una escalera exterior mojada cuando

ocurrió el accidente; las huellas de los peldaños eran tan estrechas que no proveían suficiente área para apoyar el pie; la terminación de la huella era en hormigón "totalmente pulido" lo que la hacía intrínsecamente resbaladiza; los peldaños terminaban en una franja de cemento pulido y liso en forma de chaflán; el ángulo de inclinación de la escalera era excesivo e inherentemente peligroso; la perjudicada ejercía sumo cuidado al bajarla. Concluimos, por lo tanto, que "la causa eficiente del accidente fue mantener una escalera con escalones pulidos y que por estar a la intemperie se tornaban resabaldizos al mojarse."

■ La recurrida alega ante nos, por primera vez en el caso, que la falta del segundo pasamanos en la escalera en cuestión constituye una violación de la Sec. 43-864 del Reglamento de Planificación Núm. 7 (Edificación) que requiere que todas las escaleras tengan pasamanos a ambos lados excepto cuando su anchura sea menor de 44 pulgadas; que en este caso la escalera tenía por lo menos 48 pulgadas de ancho y que por lo tanto los demandados son responsables por los daños sufridos por la recurrida. Este argumento carece de mérito en ausencia de prueba de la aplicabilidad de dicho reglamento a la edificación en este caso, pues no aparece del récord que dicho edificio se construyese con posterioridad a la vigencia de dicho reglamento. No se demostró que la perjudicada estuviese impedida de utilizar el pasamanos existente pues el reglamento de la escuela ya no le era aplicable ni aparecía que hubiesen personas subiendo al tercer piso al mismo tiempo que ella bajaba. De todos modos, la prueba no demostró que la escalera adoleciese de defecto alguno que fuese la causa eficiente del accidente.

*En vista de lo expuesto, se revocará la sentencia dictada en este caso y se declarará sin lugar la demanda.*

El Juez Presidente Señor Negrón Fernández disintió, aunque estima que era improcedente la condena en honorarios de abogado.