# 98 DTA 225

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

BONNIE AYALA, POR SI; ANGEL LUIS AYALA GONZALEZ, POR SI; Y AMBOS EN REPRESENTACION DE SU SOCIEDAD LEGAL DE BIENES GANANCIALES Y DE SUS HIJOS MENORES MONIQUE AYALA Y NICOLE AYALA; ETHEL VALLACE, POR SI
Demandantes y Apelados

v.

ROMAR CLEANER ASSOCIATES, ET ALS; JUAN A. RODRIGUEZ BAEZ, POR SI; JESUS MARQUES APONTE, POR SI; SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR JUAN A. RODRIGUEZ BAEZ Y JESUSA MARQUES APONTE; NEW SAN JUAN ASSOCIATES, S.E.; UNIVERSAL INSURANCE COMPANY; ASEGURADORA *"A"*; MENGANO Y SUTANO DE TAL (DEMANDADOS DESCONOCIDOS)
Demandados y Apelantes

Núm. KLAN-98-00608

San Juan, Puerto Rico, a 24 de agosto de 1998

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Giménez Muñoz y Miranda De Hostos

Alfonso de Cumpiano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los apelantes, New San Juan Associates, S.E. y Universal Insurance Company, solicitan que revoquemos la sentencia dictada por el Tribunal de Primera Instancia mediante la cual se declaró con

lugar la demanda de daños y perjuicios presentada en su contra por la Sra. Bonnie Ayala y otros. Alegan los apelantes que erró el tribunal al determinar que son responsables de los daños sufridos por la señora Ayala, al no imponerle a ésta negligencia comparada, al valorar los daños y al condenarlos al pago de honorarios de abogado.

Examinados los argumentos de las partes, la sentencia apelada, la transcripción de la prueba oral, los documentos del expediente y el derecho aplicable, concluimos que la sentencia debe ser modificada a los efectos de imponer negligencia comparada a la señora Ayala y así, ser confirmada.

## I

La Sra. Bonnie Ayala, su esposo Sr. Angel Luis Ayala, por sí, y en representación de la sociedad legal de gananciales compuesta por ambos, y de sus hijas, Nicole y Monique Ayala, y la Sra. Ethel Vallance, madre de la señora Ayala, presentaron demanda contra New San Juan Associates, y Universal Insurance Company, entre otros, reclamándole el resarcimiento de daños y perjuicios sufridos a causa de una caída de la señora Ayala el 14 de enero de 1992 en el Departamento del Trabajo Federal, donde laboraba. Dichas oficinas estaban ubicadas en un edificio propiedad de New San Juan Associates, la cual estaba asegurada por la coapelante Universal Insurance Company.

La caída se produjo mientras la señora Ayala se dirigía a su lugar de trabajo luego de almorzar en un salón de conferencias, cuando resbaló en un área mojada. Había llovido y se filtró agua a través de las ventanas. El agua se acumulaba en ese sitio desde 1989, cuando el Huracán Hugo, debido a un defecto en las ventanas que permitía filtración cuando llovía, lo que era de conocimiento tanto de la señora Ayala como de New San Juan Associates, con anterioridad al accidente sufrido por aquélla. Luego de la caída la señora Ayala sufrió dolor en su espalda, en el brazo, recibió tratamiento médico, fue hospitalizada y se le diagnosticó un disco herniado como consecuencia de la caída, que posteriormente se degeneró. Su condición se agravó con motivo de un accidente de tránsito en diciembre de 1992.

Previa aquilatación de la prueba documental y testifical, el tribunal declaró con lugar la demanda concediendo daños ascendentes a $117,275.59 a la señora Ayala, su esposo e hijas, según desglosados más adelante.

Los errores alegados en el recurso se refieren esencialmente a la aquilatación de la prueba por el tribunal apelado, los que pasamos a evaluar a la luz del derecho aplicable y de la prueba.

## II

El derecho aplicable al caso es el de la responsabilidad civil. El artículo 1802 del Código Civil rige la responsabilidad civil, derivada de actos u omisiones culposas o negligentes. 31 L.P.R.A. sec. 5141. Dispone que para que exista esa responsabilidad, es necesario que ocurra un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente.

El primer elemento, la culpa o negligencia, es falta del debido cuidado. Consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Ramos v. Carlo,* 85 D.P.R. 353, 358 (1962). La culpa consiste en la omisión de la diligencia exigible y mediante cuyo empleo podría haberse evitado el resultado dañoso. Si el daño era previsible por un hombre prudente y razonable, hay responsabilidad; si no lo era, probablemente se trate de un caso fortuito. *Tormos Arroyo v. Departamento de Instrucción,* 140 D.P.R. ___, **96 J.T.S. 34.** pág. 808; *Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700, 704 (1982).

En cuanto a la causalidad, en nuestro ordenamiento rige la teoría de causalidad adecuada. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. *Montalvo Feliciano v. Cruz Concepción,* ___ D.P.R. ___ (1998), **98 J.T.S. 6,** pág. 499. La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. *Torres Trumbull v. Pesquera,* 97 D.P.R. 338, 343-344 (1969).

La prueba aquilatada por el tribunal ha de considerarse bajo la norma que dispone que no es necesario demostrar con certeza matemática la causa exacta de un daño, sino que basta que se pruebe, mediante preponderancia de evidencia, que la conducta negligente del demandado fue el factor que con mayor probabilidad lo causó. *Núñez v. Cintrón Ortiz,* 115 D.P.R. 598, 617 (1984).

Por otro lado, lo anterior debe ser interpretado a la luz de la normativa sobre revisión en apelación. Es principio reconocido que el foro apelativo no intervendrá con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos salvo que haya mediado prejuicio o error manifiesto de su parte; la mera existencia de prueba conflictiva no constituye error manifiesto ya que precisamente le corresponde al juzgador de los hechos dirimir ese conflicto. *López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. ___ (1997); **97 J.T.S. 42**, a la pág. 838.

Veamos los planteamientos del recurso.

### -A-

En refutación de la causalidad del daño dispuesta por el tribunal, los apelantes señalan que éste erró al determinar que la caída objeto de la demanda causó la herniación del disco de la espalda de la señora Ayala y las demás dolencias reclamadas. Argumentan que dicha caída no fue la única causa de los daños, debido a que la señora Ayala había sufrido otros accidentes antes y después de la caída objeto de este pleito. En su sentencia, el tribunal efectuó específicas determinaciones de hechos al respecto, las que los apelantes atacan, haciendo su propia evaluación de la prueba.

La prueba oral desfilada consistió en la presentada por los demandantes, a saber, los testimonios de los demandantes, de la Sra. Zulma Caraballo, del Sr. Alexis Molinares y del Sr. Juan A. Rodríguez Báez y el de sus peritos, Dr. William Micheo y Dr. José Rivera del Río. La presentada por los demandados, consistió en el testimonio del Sr. Víctor Díaz a través de una declaración jurada y el testimonio de su perito, Dr. Juan Llompart.

La prueba examinada revela lo siguiente: el 14 de enero de 1992 la señora Ayala, según su testimonio, sufrió una caída al resbalar en un área mojada que se había formado en las facilidades de New San Juan Associates. Luego de la caída, sintió dolor en la parte baja de su espalda y en su brazo izquierdo. Transcripción de evidencia (T.) pág. 254. Al llegar a su casa se acostó a descansar debido al dolor que sentía. T. pág. 255. Aunque asistió al trabajo al día siguiente, sentía dolor de espalda, en las piernas, cabeza y brazo, por lo que tuvo que recurrir a la enfermería de su trabajo de donde partió al consultorio de la Dra. Norma Marrero. Esta le recomendó descanso y le recetó varios medicamentos, uno de ellos, Meclomen, para el dolor de espalda. T. pág. 256. Estuvo cinco (5) días en cama, al cabo de los cuales regresó donde la doctora Marrero, quien la refirió al Dr. José Rivera del Río, cardiólogo. Entre otras cosas, el médico le recomendó descanso hasta el 3 de febrero de 1992, cuando podría volver a trabajar. Así, la señora Ayala volvió a su trabajo el 3 de febrero de 1992 y trabajó hasta el 20 de febrero, cuando tuvo que ser llevada a la oficina del doctor Rivera del Río porque sintió dolor que le impedía caminar; éste ordenó su ingreso al Hospital San Pablo. T. págs. 508-509. La señora Ayala estuvo ocho (8) días recluida en el hospital, donde le diagnosticaron que tenía un disco herniado. T. pág. 510. Luego, tuvo que mantenerse convaleciendo en su hogar con limitaciones de movimiento hasta julio de 1992, período durante el que recibió 53 terapias físicas. A partir de julio, el doctor Micheo le permitió trabajar algunas horas diarias. T. pág. 271. No podía guiar. En septiembre de 1992 pudo volver a trabajar; siguió con dolor en la espalda, las piernas y el hombro, y tomando los medicamentos. T. págs. 286-290. Cuanto tuvo el accidente de tránsito en diciembre de 1992, le empezó a molestar mucho más la espalda, como antes. T. pág. 291.

Tanto el perito de los demandantes, doctor Micheo, así como el de los demandados, doctor Llompart, testificaron respecto a la herniación como consecuencia de la caída de 14 de enero. T. págs. 427, 428, 429, 546. Véase el informe pericial del doctor Llompart, apéndice de la apelación, pág. 104.

Concluimos que la prueba desfilada en el caso de autos sustenta la determinación del tribunal de instancia en cuanto a que la caída del 14 de enero de 1992 objeto de este recurso fue la que causó el daño. Esta también sustenta la responsabilidad y la negligencia de New San Juan Associates, la cual conocía del defecto que permitía la entrada de agua cuando llovía, por lo que tenía que prever la peligrosidad de la situación. T. págs. 36-38, 88-89.

La causalidad decretada no queda desvirtuada por el historial médico y testimonio sobre accidente previo y el accidente de tránsito posterior a la caída. El doctor Rivera del Río aclaró en el contrainterrogatorio que lo sucedido el 1ro de enero de 1992 fue un *"bend down"*. T. págs. 525-526. Explicó en el interrogatorio redirecto, que el incidente previo a la caída, consistente en doblar la espalda hacia adelante el 1ro de enero de 1992, aunque pudo lastimar en términos generales, no podía causar la formación de una vértebra en la forma que la tenía la señora Ayala. T. págs. 531-532. Por otro lado, en cuanto al accidente automovilístico de 13 de diciembre de 1992 en que se vio involucrada la señora Ayala, el doctor Micheo atestiguó que el efecto de dicho accidente fue el de tan sólo agravar la condición preexistente causada por la caída de 14 de enero de 1992. T. pág. 451. Al ser contrainterrogado respecto a si los traumas anteriores a 1992 pudieron haber causado las dolencias de la señora Ayala en la espalda, el doctor Micheo explicó que siempre y cuando fuera una lesión relativamente reciente al momento de enero de 1992; que a esa fecha había un disco herniado y en 1994, el disco se había degenerado; que si hubiese habido lesiones en el 1989, 1988, 1985 él hubiese visto cambios degenerativos en 1992 y que lo que había era un disco herniado. T. págs. 474-475.

El foro apelado tomó en consideración en su sentencia lo señalado sobre traumas previos y el accidente posterior, lo que quedó evidenciado en sus determinaciones de hechos. Determinación de hechos núm. 25. Aún así, concluyó que la caída en las facilidades de New San Juan Associates fue la causa del daño sufrido por la señora Ayala. Es incuestionable que la determinación de causalidad y de responsabilidad hecha por el foro de instancia, tiene base en la prueba.

**-B-**

Como segundo señalamiento de error, argumentan los apelantes que incidió el tribunal al no imponerle responsabilidad comparada a la señora Ayala. El planteamiento se basa en el hecho de que la señora Ayala conocía de las filtraciones de agua en el edificio que ocasionaban humedad en el piso.

La base legal del planteamiento queda contemplada en el artículo 1802 del Código Civil que dispone, en su parte pertinente, que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. 31 L.P.R.A. sec. 5141. Esta norma requiere que el juzgador, además de determinar el monto de la compensación que corresponde a la víctima, determine la fracción de responsabilidad o negligencia que corresponde a cada parte, y reduzca la indemnización del demandante de conformidad con esta distribución de responsabilidad. *Quiñonez v. Manzano,* 141 D.P.R. ___ (1996), **96 J.T.S. 95**, pág. 1314. Asimismo, las compensaciones de los co-demandantes, parientes de un perjudicado que incurrió en negligencia, se reducirán en la misma proporción que la del demandante. *Miranda v. E.L.A.,* ___ D.P.R. ___ (1994), **94 J.T.S. 152,** pág. 526.

La prueba sostiene que la señora Ayala conocía, al igual que los otros empleados, que el piso del área donde sufrió la caída se mojaba cuando llovía. Determinación de hechos enmendada, núm. 17; T. pág. 36. El tribunal dedicó gran parte de sus determinaciones de hechos a describir las condiciones de peligrosidad del área en la cual ocurrió el accidente el día de los hechos. Encontró probado que al momento de la caída, el Sr. Angel M. Acosta estaba secando el piso porque había sido llamado debido a que se había filtrado agua por las ventanas; que cuando llovía *"el agua corría por el piso"* dentro de las oficinas, por los pasillos y debajo de los escritorios; que desde 1989 existía esa situación; que el piso se encontraba mojado en el momento del accidente por razón de la lluvia; que la Srta. Caraballo, quien almorzo con la señora Ayala, vio antes de la caída al señor Acosta con un cubo y un mapo; que el día del accidente había agua en el piso y en el pasillo de las oficinas. Determinaciones de hechos 9-21. Específicamente, medió testimonio a los efectos de que desde 1989, cada vez que llovía se filtraba el agua, que se filtró el día del accidente y que la gente que estaba allí vio que realmente se filtraba el agua. T. pág. 74. Además, se declaró que cualquiera que caminara por allí podía ver el agua en el piso cuando llovía. T. pág. 75.

Lo declarado respecto a la visibilidad del agua cuando llovía, y de que se había acumulado agua el día de la caída a tal grado que fue necesario secar con mapo, dan base para inferir que la señora Ayala conocía que el piso estaba mojado, o debió conocerlo ante la peligrosidad del área y que no tomo la precaución debida cuando pasó de regreso a su área de trabajo.

Por tanto, entendemos que hay base para imponer cierto grado de negligencia a la señora Ayala

ante las condiciones visibles de agua acumulada cuando llovía y por no actuar con la precaución esperada de una persona prudente y razonable, que conoce que en cierto lugar existe una situación peligrosa con bastante frecuencia. *Torres v. Metropolitan School,* 91 D.P.R. 1, 6 (1964).

El hecho de que en el momento en que ocurrió la caída la señora Ayala desconociera que había llovido ese día, no la exime de su deber de actuar con la debida precaución cuando la situación, según la prueba, era frecuente, era posible que el piso estuviera mojado y la acumulación de agua era visible.

No se trata de las circunstancias que han mediado en otros casos, a los efectos de que *"[e]l cliente de una tienda, por ejemplo, espera de ordinario que los pasillos y los corredores abiertos al público estén libres de obstáculos, trampas y sitios resbalosos". Goose v. Hilton Hotels,* 79 D.P.R. 523, 530 (1956). En este caso, podía esperarse que mediara la circunstancia de peligrosidad por la posibilidad reconocida de filtraciones, situación que era del conocimiento de la señora Ayala.

La evaluación de la totalidad de la prueba nos mueve a determinar que la negligencia de la señora Ayala al no tomar las debidas precauciones en un área frecuentemente peligrosa y de acumulación visible de agua debe reducir su indemnización y la de sus parientes en un treinta por ciento (30%).

### -C-

Por tratarse sobre la misma materia, discutiremos en conjunto los errores relacionados con la cuantía concedida como indemnización a las partes demandantes. Dada la conclusión de negligencia comparada a la que hemos llegado, nos corresponde determinar si la valoración de los daños estimada por el foro de instancia es la que debe servir de base para la correspondiente reducción, o si por el contrario dichas cuantías deben ser reducidas de antemano por ser exageradas.

La jurisprudencia ha señalado reiteradamente que la valoración de los daños descansa en la sana discreción del juzgador. *Torres Solís v. A.E.E.,* 136 D.P.R. ___ (1994), **94 J.T.S. 89,** pág. 12040. Merece gran deferencia la discreción que ejercitan los tribunales de instancia en su apreciación de daños ya que son los que de ordinario están en mejor posición de determinarlos por tener contacto directo con la prueba del reclamante. Por ello, las partidas concedidas como indemnización no deben ser alteradas en revisión salvo que resulten ser ridículamente bajas o exageradamente altas. *Torres Solís v A.E.E., supra.* Para que proceda modificar las sumas concedidas la parte que lo solicita viene obligada a demostrar la existencia de las circunstancias que hacen meritoria dicha alteración. *Blas Toledo v. Hospital Nuestra Señora de la Guadalupe,* ___ D.P.R. ___ (1998), **98 J.T.S. 101**, pág. 1438; *Quiñonez v. Manzano, supra,* a la pág. 1315.

Los apelantes sostienen que la valoración de los daños en el presente caso resulta ser excesiva al compararla con las concedidas en casos anteriores resueltos por el Tribunal Supremo. Sin embargo, es sabido que debido a que cada caso se distingue por sus propias y variadas circunstancias, y a pesar de que es aconsejable que los tribunales de instancia utilicen como guía o punto de partida las cuantías concedidas por el Tribunal Supremo en casos similares anteriores, las decisiones sobre la cuantía concedida en ellos no son precedentes obligatorios para otro caso. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, supra,* a la pág. 1439.

El tribunal sentenciador estimó los daños de la señora Ayala en $22,500.00 en concepto de sufrimientos físicos, dolores e incomodidades, como la hospitalización, y terapias administradas, $15,000.00 en concepto de angustias mentales y $37,500.00 en concepto de incapacidad parcial permanente ascendente al quince porciento (15%) de sus funciones generales y los de la sociedad legal de gananciales, en $17,275.59 por pérdida de ingresos y $300.00 por gastos especiales.

Las angustias mentales del co-demandante señor Ayala, esposo de la señora Bonnie Ayala, fueron estimadas por el tribunal en $15,000.00 y las de las co-demandantes hijas del matrimonio en $5,000.00 cada una.

Examinadas las determinaciones de hechos que a esos efectos realizara el tribunal a tenor de la prueba, y en vista de que estas cantidades se verán correspondientemente reducidas en concepto de la negligencia comparada de la perjudicada, no intervendremos con la valoración de los daños por no ser improcedente, ni excesiva y por estar sostenida por la prueba presentada.

La prueba revela que la señora Ayala tuvo que ser hospitalizada en el Hospital San Pablo a causa del dolor severo que le producía la herniación del disco. T. pág. 427. Estuvo allí recluida por un período de ocho (8) días. Posteriormente se tuvo que someter a aproximadamente 53 sesiones de terapias para la espalda durante un período de cinco (5) meses. T. pág. 451. Estas fueron efectuadas en su casa ya que permanecía acostada sin poderse mover debido al dolor. Fue necesario instalar una cama de posiciones para la señora Ayala en la sala de su casa, por verse incapacitada de subir al segundo piso donde estaban las habitaciones. T. págs. 270-271. Debido a que en ese primer piso no había ducha, el aseo de la señora Ayala se dificultó, sus hijas tenían que asearla o bañarla en la acera frente a la casa con la manguera. T. pág. 119. Posteriormente, ante la incapacidad de regresar a su trabajo, tuvo que realizarlo parcialmente y desde su hogar. Luego fue capaz de realizar tarea parcial en su trabajo, pero no podía conducir, lo que requería que alguien la llevara. T. pág. 286. Luego de aproximadamente ocho (8) meses desde ocurrido el accidente, en septiembre de 1992, se le permitió regresar a tarea completa, pero aún sentía dolores en el cuello, el hombro y la cadera. T. pág. 289.

Finalmente, encuentra base en la prueba pericial desfilada la determinación del tribunal de que la señora Ayala quedó, a causa de la caída, con un impedimento físico de 15% de su capacidad funcional total. T. pág. 456. El doctor Micheo desglosó ese total del siguiente modo: 5% por el daño al disco, 5% por la compresión o irritación del nervio y 5% por la duración de los síntomas. Lo explicado al respecto por el perito de los apelantes, doctor Llompart, quien ni siquiera examinó varios de los expedientes médicos de la señora Ayala ni a ésta, no le mereció al tribunal de instancia el crédito que tuvo lo explicado por el doctor Micheo. T. pág. 566. Más aún, el doctor Llompart estuvo de acuerdo en que la caída tuvo efecto incapacitante en la señora Ayala. T. pág. 546, informe pericial del doctor Llompart, apéndice de la apelación, pág. 104. Por otro lado, los apelantes no nos han colocado en condiciones de pasar juicio respecto a la materia especializada de interpretación de las guías médicas sobre las cuales declararon los peritos. En estas circunstancias, nos merece deferencia la conclusión del juzgador de instancia, ante quien compareció la señora Ayala y quien pudo observar su estado físico. La prueba pericial examinada nos parece correctamente analizada en la sentencia.

En cuanto a las cuantías concedidas al esposo y a las hijas de la señora Ayala, encontramos que no resultan exageradas y están sustentadas por la prueba.

**-D-**
Finalmente, argumentan los apelantes que incidió el tribunal al imponerles $5,000.00 en concepto de honorarios de abogado por temeridad.

La Regla 44.1 de las de Procedimiento Civil dispone, en su parte pertinente, que cuando una parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en la sentencia la suma que entienda correspondiente en honorarios de abogado. 32 L.P.R.A. Ap. II. Jurisprudencialmente se ha explicado que el concepto de temeridad comprende toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, supra*, a la pág. 1437. Algunas de las circunstancias que han sido identificadas por la jurisprudencia como demostrativas de temeridad son: 1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; 2) defenderse injustificadamente de la acción; 3) creer que la cantidad reclamada es exagerada y que sea esa la única razón para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; 4) arriesgase a litigar un caso del que se desprendía *prima facie* su responsabilidad, y 5) negar un hecho que le conste es cierto a quien hace la alegación. Los propósitos de la imposición de honorarios de abogado son castigar al litigante perdidoso por haber desplegado esa actitud, disuadir la litigación innecesaria, y alentar las transacciones. *Blás Toledo v. Hospital Nuestra Señora de la Guadalupe, supra*, a la pág. 1437. Por otro lado, el hecho de que posteriormente se determine que hubo negligencia comparada del reclamante, no implica falta de temeridad. *Fernández Mariño v. San Juan Cement Co.*, 118 D.P.R. 713, 722 (1987).

A la luz de la doctrina anteriormente señalada, concluimos que no incidió el tribunal al imponerle a los apelantes honorarios de abogado por temeridad. En las contestaciones a la demanda negaron toda responsabilidad, adujeron que la demanda no aducía causa de acción que ameritara la concesión de un remedio, además, realizaron amplio descubrimiento de prueba y obligaron a los apelados a litigar por

largo tiempo.

## III

Por los fundamentos anteriormente expuestos, se modifica la sentencia apelada a los efectos de imponer negligencia comparada equivalente al 30% de la responsabilidad a la señora Ayala y de reducir conforme a ello, las partidas concedidas a la señora Ayala y a cada uno de sus parientes demandantes. Así modificada, se confirma la sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General