JAMES WEBER y DOROTHY WEBER, demandantes y recurrentes, *v.* GABRIEL MEJÍAS e INDEMNITY INSURANCE CO. OF NORTH AMERICA, demandados y recurridos.

*Número:* 12636    *Resuelto:* 23 de marzo de 1962

*Canales & Segarra, José F. Quetglas Álvarez,* abogados de los recurrentes; *Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco y Hernán C. Pesquera,* abogados de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

PER CURIAM: La demandante Dorothy Weber sufrió una caída mientras descendía por una escalera que conduce a un apartamiento interior contiguo a la residencia del demandado Gabriel Mejías, que estaba habitado por la madre y hermana de éste. Como consecuencia de la caída tuvo una fractura del húmero izquierdo y múltiples hematomas en varias partes del cuerpo. Presentó acción en reclamación de los daños sufridos alegando que la causa eficiente y próxima del accidente fue la negligencia del demandado "consistente en mantener allí una escalera defectuosa, e inadecuada e inapropiada para el uso al cual está destinada." En el acto de la conferencia preliminar al juicio, la parte demandante especificó los siguientes hechos como constitutivos de la negligencia imputada: (1) el demandado omitió tomar las medidas usuales para mantener la escalera seca; (2) las huellas de los peldaños son tan estrechas que no proveen suficiente área para apoyar el pie; (3) la terminación de la huella de los peldaños es en hormigón "totalmente pulido," lo que la hace intrínsecamente resbaladiza; (4) los peldaños terminan en una franja de cemento (sic) pulido y liso, en forma de chaflán; (5) el ángulo de inclinación de la escalera es excesivo e inherentemente peligroso; y (6) la escalera carecía de medidas de seguridad, tales como alfombra de goma y pasamanos.

El día del accidente la señora Weber había visitado a las ocupantes del mirador en relación con la costura de unos trajes, según lo había hecho en varias ocasiones durante los tres años anteriores. Una vez terminada su visita se retiraba a su hogar y para ello utilizó el único medio de egreso disponible, la escalera mencionada. Descendió por el segundo tra-

mo de la escalera, que consiste de un descanso y seis escalones, y resbaló en el tercer peldaño. Este tramo está descubierto y se encontraba mojado por efecto de la lluvia que había caído momentos antes. La demandante llevaba colgado un traje en su brazo izquierdo, y descendía "de medio lado [1] y con mucho cuidado porque los escalones aparecían ser estrechos y yo me sentía insegura" (T.E. pág. 6) ; trató de apoyarse en uno de los muros al extremo de los escalones cuyo borde hace las veces de pasamanos, pero aun así, resbaló con las consecuencias indicadas.

El tribunal de instancia determinó que la escalera no adolecía de defectos de construcción [2] "que pueda considerarse que ofrecía *un peligro especial,* fuera del riesgo que naturalmente ofrece toda escalera". Y añadió que "Si bien es cierto que el plano [se refiere a la huella] de los escalones es de cemento [sic] pulido, *no puede diferenciarse ese piso de la infinidad de pisos de cemento* [sic] *pulido que tienen las escaleras en Puerto Rico."* (Bastardillas nuestras.) Declaró además que la demandante asumió el riesgo de bajar la escalera que estaba húmeda, a pesar de que la "conocía bien." Desestimó la demanda. ■

1. A los fines de fijar la responsabilidad del dueño de la propiedad debemos establecer como punto de partida que la demandante era una invitada en el lugar de la ocurrencia del

---

[1] En el curso de su testimonio la demandante ratificó que siempre tenía cuidado en la escalera "porque la huella es estrecha y siempre bajaba un poco de lado" (T. E. pág. 21) "de modo que mi pie no sobresaliera de la huella." (T.E., *id.*)

[2] Convenimos con el tribunal a quo en que la prueba es suficiente para establecer que las medidas de la escalera y el ángulo de inclinación está dentro de normas aceptables de construcción, y que cualquier diferencia existente es tolerable y admisible. También aceptamos que los muros laterales de la escalera sirven adecuadamente como pasamanos y que la terminación en forma de chaflán no constituye un riesgo que deba preocuparnos a los fines de la determinación de responsabilidad. En relación con la aplicación de los requisitos exigidos por distintos códigos de construcción para fijar responsabilidad civil por accidentes en edificaciones, véase, *Santaella* v. *Licari et al.,* 83 D.P.R. 887 (1961).

accidente. Esto es así aplicándole tanto el criterio de "beneficios económicos"—la señora Weber utilizó la escalera en una actividad que producía rendimiento material a las ocupantes —como el criterio de "invitación"—la conducta de las ocupantes indujo a la demandante a creer que el local podía ser utilizado por visitantes. Harper y James, *The Law of Torts* (1956), vol. 2, págs. 1478-1479. ▪

2. Los autores mencionados([3]) exponen la teoría aplicable a los casos de invitados en las siguientes palabras:

"La obligación del ocupante para con un invitado es una de debido cuidado bajo toda circunstancia. Si el demandante resulta ser un invitado en la ocasión y en el lugar en que sufre el daño, el ocupante, naturalmente, debe observar para con él todos los deberes que tiene para con los transgresores y concesionarios. De modo que el ocupante tiene que ejercer cuidado de no ocasionarles daño al demandante mediante una actividad negligente, así como de advertirle de los peligros latentes que le son de hecho conocidos al primero. *Además, el ocupante tiene la obligación de inspeccionar su propiedad y descubrir condiciones peligrosas.* Esta es la diferencia más sobresaliente entre los derechos de los invitados y los de los concesionarios, y en ocasiones su importancia ha eclipsado el hecho de que el derecho del invitado a una inspección razonable es meramente parte de una obligación mayor de debido cuidado a fin de que la propiedad sea razonablemente segura. Igual que en casos de negligencia en general, el ocupante puede ser responsable aun cuando hubiese realizado la inspección, si el daño puede atribuirse a una construcción defectuosa u otra negligencia resultante en una condición peligrosa, o *a la omisión de tomar precauciones razonables para proteger a los invitados de los peligros que pueden anticiparse en la disposición o en el uso de la propiedad.* Así, en un caso reciente de California, un demandante sufrió daños cuando se cayó al romperse su silla giratoria en una barra. El demandado demostró que la rotura había sido causada por fatiga de metal en un pasador que aseguraba el asiento en su sitio, que la inspección había sido cuidadosa y regular, y que el defecto podía haber escapado a la más cuidadosa inspección.

---

([3]) Harper y James, *op. cit.*, págs. 1487-1488.

El tribunal resolvió, sin embargo, que el jurado podía decidir que la propia naturaleza de tal defecto latente exigía un pasador más grande o quizás 'un pasador adicional u otro artefacto de seguridad'." (Bastardillas nuestras.)

En *Goose* v. *Hilton Hotels*, 79 D.P.R. 523, 527-8 (1956) nos expresamos así:

"Goose desde luego era un 'invitado' del hotel. 'El poseedor no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección. No existe responsabilidad por lesiones resultantes de condiciones peligrosas que desconoce, y que una inspección razonable no descubriría, *o de condiciones de las cuales no se anticiparía un riesgo no razonable.* De igual manera, en el caso corriente, no hay obligación de proteger al visitante contra peligros que le son conocidos, *o que son tan aparentes que puede razonablemente esperarse que los descubra y se pueda proteger.* El visitante tiene derecho, sin embargo, a suponer que se ha ejercido el cuidado debido para que el local sea seguro para él, y no viene obligado, como en el caso de un *licensee,* a estar a la expectativa para descubrir posibles defectos'." ▇

La forma en que ocurrió el accidente demuestra que la reclamante tomó precauciones al descender por la escalera. Si algo puede decirse es que fue muy cuidadosa, pues bajó de lado porque se sentía insegura. No obstante haber observado una conducta prudente sufrió una caída con consecuencias graves. Nos encontramos ante un caso difícil porque la escalera no era ostensiblemente defectuosa. Sin embargo, es pertinente enfatizar que la superficie de los peldaños era pulida, que unida a la construcción en descubierto, propendía a convertirlos en resbaladizos cuando se mojaban por efecto de las lluvias. Esto es así, independientemente de las precauciones que pudieran razonablemente adoptarse por quien utilizara la escalera. El propietario tenía la obligación de prever esta contingencia que creaba una situación de peligro bajo determinadas circunstancias. Cfr. *Baralt et al.* v. *Estado Libre Asociado*, 83 D.P.R. 277 (1961). Su responsabilidad

está predicada en la falta de previsibilidad y no se libera de ella porque la construcción sea común y corriente en esta localidad. Indicamos de paso que una superficie puede tener apariencia de estar pulida y no ser intrínsecamente resbaladiza cuando en su construcción se emplean ciertos materiales abrasivos que impidan tal condición. En el presente caso no se presentó prueba alguna a este efecto, y por tanto, sólo podemos considerar el hecho de que los escalones se tornaban resbaladizos cuando se mojaban debido a su terminación pulida. Bajo las circunstancias concurrentes de este caso creemos que la causa eficiente del accidente fue mantener una escalera con escalones pulidos y que por estar a la intemperie se tornaban resbaladizos al mojarse. El propietario incurrió en falta al omitir prever las consecuencias que esto produciría.

Como apuntamos anteriormente la demandante fue cuidadosa al descender la escalera y observó la conducta de cualquier persona prudente en idénticas circunstancias. No es necesario, por tanto, discutir la cuestión sobre asunción de riesgo a que se refiere el tribunal inferior. (⁴)

*Se revoca la sentencia dictada y declara con lugar la demanda interpuesta, condenándose a los demandados a satisfacer solidariamente a la demandante la suma de $6,000 por sufrimientos físicos y angustias mentales y $427 para cubrir los gastos razonables para tratamiento médico en que incurrió. Se le impone además el pago de las costas, incluyendo las de apelación, sin incluir honorarios de abogado.*

---

(⁴) Para la fecha en que ocurrió este accidente no estaba vigente la enmienda al artículo 1802 del Código Civil que dispone que "La imprudencia concurrente del perjudicado no exime de responsabilidad pero conlleva la reducción de la indemnización."