149 So.2d 433 (1963)
Mrs. Jeanette Silverman LEVINE et al., Plaintiff and Appellee,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Appellant.
No. 749.
Court of Appeal of Louisiana, Third Circuit.
January 28, 1963.
Rehearing Denied February 20, 1963.
*434 Jones, Kimball, Harper, Tete & Wetherill, by William R. Tete, Lake Charles, for defendant-appellant.
Cavanaugh, Hickman, Brame & Holt, by Edmund E. Woodley, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This damage suit arises out of plaintiff's alleged slip and fall in the hallway of defendant's insured, St. Patrick's Hospital, in Lake Charles, Louisiana. A jury trial in the lower court resulted in judgment for the plaintiffs. Defendant appealed.
The general principles of law applicable in these slip and fall cases are well established in our jurisprudence. It is fundamental that the owner of a business establishment is not the insurer of the safety of visitors. He need only keep the floors and passageways in a reasonably safe condition for use in a manner consistent with the purposes of the premises. See Meyerer v. S. H. Kress & Co., La.App., 89 So.2d 475 and Peters v. Great Atlantic & Pacific Tea Co., La.App., 72 So.2d 562 and the cases cited therein. The mere fact that a visitor is injured on the premises does not create a presumption of negligence. In order to recover, a visitor must prove a breach of the duty of the owner to use reasonable care. See again the Meyerer case and the Peters case, supra, and the authorities cited therein. The doctrine of res ipsa loquitur is inapplicable in these cases. Peters v. Great Atlantic & Pacific Tea Co., supra, and the authorities cited therein. Finally, if the alleged slip and fall is alleged to have been caused by an extraneous object or substance on the floor, it must be shown that the owner had either actual or implied knowledge of the extraneous substance for such a time that the owner had an opportunity to remove it. In other words, it must be shown that the owner or his employees placed the extraneous substance there or, if placed by someone else, that the owner or his employees had actual knowledge of the presence of the substance or that it had remained in such a position of danger for such a length of time that the owner or his employees should have had knowledge of the substance and removed it. The claimant *435 bears the burden of proving these facts. Peters v. Great Atlantic & Pacific Tea Co., supra, and the authorities cited therein; LeJeune v. Hartford Accident & Indemnity Co., La.App., 136 So.2d 157 (3rd Cir.App. 1962, writ of certiorari denied); Wisckol v. Connecticut Fire Ins. Co., 145 So.2d 89 (4th Cir.App.1962)
The issues in the present case are factual, i. e., was there a wet spot on which plaintiff slipped and if so, did the hospital employees have actual or constructive notice of its presence for such a length of time that they should have removed it.
The facts show that Mrs. Levine, a rather stout 61 year old white lady, was visiting her daughter, a patient in the hospital, on Sunday, April 5, 1959. In leaving the hospital at about noon, she and her son-in-law took the elevator to the ground floor, which is referred to in the record as the "basement", where the colored ward was located. Mrs. Levine and her son-in-law emerged from the elevator and started toward the emergency entrance to the hospital. At a point in the hallway, about 30 feet from the elevator and in front of the door to Room 112, Mrs. Levine fell to the floor, fracturing her hip. Her injuries were serious, painful and permanently disabling.
Plaintiff contends she slipped in a "pool of water". She stated that she did not see the water before she slipped but she "felt it" as she was lying on the floor and it was a "damp condition". Plaintiff's son-in-law, Norman Ledgin, who was with her at the time she fell, did not see any wet spot. The only evidence in this record that there was a wet spot on the floor is the testimony of Mrs. Levine that after she fell she felt a "damp condition".
On the other hand, defendant produced several witnesses to show that a great amount of care was used in keeping the floors and passageways of the hospital clean and safe. Mrs. Marie DeBellevue, the executive housekeeper of the hospital, testified that the floors, which were of asphalt tile construction, were waxed with "slip proof" wax once a month and spot waxed in the most used places once a week. In addition, all of the floors were swept and damp mopped every day of the week except Sunday. On Sunday the floors were only swept. Mrs. DeBellevue inspected the floors twice daily and had porters to do any cleaning work actually necessary.
Sister Joaquemine, the supervisor of the floor on which the accident occurred, was directly responsible for all activities on the floor, including the maintenance of the floors. She testified that all personnel had been instructed to watch the condition of the floor to keep it safe and clean. The Sister testified that if she noticed any slippery substance on the floor she would clean it up herself.
We are satisfied from the evidence that the hospital maintained, even on Sunday, a reasonably efficient procedure for keeping the floors safe and free of any slippery substances.
Defendant also called several witnesses to show that there was no wet spot on the floor at the time of the accident. Mrs. Eleanor Porche, whose husband was a patient in Room 112, testified that she was standing in the hall across from her husband's room and saw Mrs. Levine when "her ankle gave ways and she fell right in front of the door where my husband was hospitalized in Room 112." Mrs. Porche stated positively that the floor was clean and polished and she did not see any water on it.
Mr. Floyd Sattersfield, who was visiting Mr. Porche, testified that he saw Mrs. Levine "walking rather rapidly" and that as she neared the entrance to Room 112 "she seemingly twisted her ankle and fell." Mr. Sattersfield also stated that there was no water whatsoever on the floor.
Mrs. Terrell Williams, a nurses' aid, was in Room 111 and went to the scene immediately. She testified there was no water on the floor. She stated that she had been on duty since 7 o'clock that morning and had *436 been going and coming in the hall many times and had seen no water on the floor in the hallway.
Sister Joaquemine, the floor supervisor, was present and actually saw Mrs. Levine fall. The Sister testified that, being aware of the possible legal consequences of such a fall, and having been told by Mrs. Levine that she thought "there was something on the floor", she examined the floor immediately after Mrs. Levine was removed (she remained on the floor for about 10 minutes) but found no water or other extraneous substance.
From the above we see that defendant has produced four witnesses who testified positively there was no wet spot on the floor. In addition, plaintiff's own son-in-law testified that he saw no water on the floor. As opposed to this, we have only the testimony of Mrs. Levine who actually did not see any water but only felt a "damp condition". Under the circumstances we are forced to the conclusion that the jury has committed manifest error in finding that there was any water or wet spot or "damp condition" on the floor which caused Mrs. Levine to fall.
Furthermore, we are of the opinion that even if we were to assume for the sake of argument that there was a wet spot on the floor, no negligence on the part of the hospital has been proved. There is absolutely no evidence that hospital employees caused the wet spot. It is not shown how any such wet spot was caused or how long it had been there. Furthermore, there is no showing whatever that hospital employees had actual knowledge of the wet spot. As to constructive notice, the only evidence in the record indicates that if there was in fact a "damp condition", which no one could see and only Mrs. Levine felt, it had not been there very long. Mrs. Williams, the nurses' aid, testified that she had been in and out of Room 112, and across the spot where the accident occurred, all morning, and that there was nothing on the floor. Sister Joaquemine testified that she had seen nothing in her inspection just previous to the accident. Plaintiff bears the burden of proving constructive knowledge. LeJeune v. Hartford Accident & Indemnity Co., supra, and the cases cited therein. Clearly the plaintiff in the instant case has failed to sustain this burden. Actually, the preponderance of the evidence shows there was no constructive knowledge.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant and against the plaintiffs rejecting their demands at their cost. All costs of this appeal are assessed against the plaintiffs.
Reversed and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.