PETRA FELICIANO, ETC., Plaintiffs and Appellees, *v.* ESCUELA DE ENFERMERAS DE PUERTO RICO and THE TRAVELERS ET AL., Defendants and Appellants.

No. R-63-44.        Decided May 19, 1967.

510

*F. Fernández Cuyar* and *Amancio Arias Cestero* for appellants.
*Miguel A. Ruiz* for appellees.

PER CURIAM: Upon leaving Clínica Dr. Pila of Ponce, from a visit to a patient, appellee, Petra Feliciano, suffered a fall which caused a fracture in the left elbow and a permanent disability of 15% of the physiological functions of her left arm. The trial court originally rendered judgment sustaining the complaint and ordering defendants to pay $2,500 for damages and $300 for attorney's fees. Defendants-appellants moved for reconsideration, which was denied, but the court *motu proprio* increased the compensation to $5,500.

The evidence presented to support the claim established that plaintiff called at Clínica Dr. Pila of Ponce to visit a patient on January 31, 1960 late in the afternoon. Upon termination of the visit when she approached the stairway in order to leave the premises, she slipped when she was going to take hold of the handrail and fell on the first step. The evidence, according to the finding of the trial judge, showed that at the place where the accident occurred the floor was wet. Defendants' evidence denied this fact, yet it was established on cross-examination that the surface of the floor was very smooth and slippery even when dry.[1]

---

[1] Witness Francisca Pérez Lluberas, General Supervisor of Clínica Dr. Pila, on cross-examination testified:
"Q. Tell me, is it true or not that the floor of that hospital has a very smooth surface and to a certain point slippery even if it is dry?
"A. Yes, sir.
"Q. Is that so? Do you have any doubts?
"A. I have no doubts." (Tr. Ev. 61.)
Witness Gloria Rodríguez de Jesús, phone operator then of Clínica Dr. Pila, on cross-examination said:
"Q. Is it true or not that the floor of said hospital was at that time a very polished, smooth floor, that even when dry it was at times slippery?
"A. Well, it was." (Tr. Ev. 72.)

In this case, contrary to the circumstances present in *Torres* v. *Metropolitan School*, 91 P.R.R. 1 (1964), defendant's own evidence established that the floor's surface was extremely smooth and slippery even when dry, which rendered it dangerous, especially in a hospital, this condition constituting an unreasonable risk. As in *Viñas* v. *Pueblo Supermarket*, 86 P.R.R. 31 (1962) defendant was negligent in tolerating a hazardous situation. What we said in *Weber* v. *Mejías*, 85 P.R.R. 72, 76 (1961) is certainly applicable:

". . . The owner's duty was to foresee that contingency which created a dangerous situation under specific circumstances. *Cf. Baralt* v. *Commonwealth*, 83 P.R.R. 268 (1961). His liability is predicated on the lack of foreseeability and he is not relieved because the construction is common and ordinary in this area. We point out incidentally that a surface may have a smooth appearance, without being intrinsically slippery when certain abrasive materials are used in its construction to prevent the existence of such a condition. In the case at bar no evidence was presented to that effect, and therefore, we may only consider the fact that the steps became slippery when wet due to its smooth finish. Under the attendant circumstances of this case, we believe that the efficient cause of the accident was keeping a stairway with smooth steps and that because these were exposed they became slippery when wet. The owner was negligent in failing to foresee the consequences this would bring."

See also, *Sarsfield* v. *St. Mary Hospital*, 129 N.W.2d 306, 308 (Minn. 1964); *cf. Doctors Hospital* v. *Badgley*, 156 F.2d 569 (D.C. Cir. 1946).

After examining the record we do not find any justification for the increase in the compensation originally granted. The judgment will be modified in order to limit the compensation to $2,500. As thus modified, it is affirmed.

Mr. Justice Ramírez Bages dissented in a separate opinion in which Mr. Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Rigau concur.

—O—

MR. JUSTICE RAMÍREZ BAGES, with whom MR. JUSTICE PÉREZ PIMENTEL, MR. JUSTICE BLANCO LUGO, and MR. JUSTICE RIGAU concur, dissenting.

San Juan, Puerto Rico, May 19, 1967

I dissent from the majority opinion because I believe that the judgment in this case holding appellants liable for the injuries received by Mrs. Petra Feliciano as a result of a fall upon leaving the premises of Clínica Pila of Ponce should have been reversed. It was not established that (1) appellant, Escuela de Enfermeras de Puerto Rico, hereinafter designated as the *Escuela* had direct or implied knowledge of the fact that there was water on the floor, at the place where Mrs. Feliciano slipped and fell, or that somebody related to the *Escuela* would have thrown it at the scene of the accident, or that (2) there existed at the scene of the accident a dangerous situation created or known by the *Escuela* and that such situation caused the accident in question.

From the findings of fact and conclusions of law of the Superior Court, Ponce Part, of September 26, 1962, it is apparent that: (1) appellee, Petra Feliciano, suffered a fall upon going towards the stairway exit of Clínica Pila; (2) said hospital is operated by the *Escuela*, which had in force a public liability policy issued by The Travelers Indemnity Company; (3) the referred fall which caused a fracture of the left elbow as a result of which appellee suffers from a partial permanent disability of 15% of the physiological functions of her left arm, was due to the fact that upon taking hold of the handrail of the stairway, Mrs. Feliciano slipped and fell; (4) where she fell the floor was wet, a situation which she did not observe because the floor was shiny; (5) the floor there has white tiles with gray

lines and its color is dark, very smooth and slippery even when dry; (6) because of the time, six p.m. on January 31, 1960, there was not much light outside; (7) the sole cause of the accident was the negligence of the employees of the *Escuela* in permitting the presence of water at the scene of the accident; (8) appellee's injuries and physical sufferings are assessed at $2,500. Judgment was rendered favorable to appellees and against appellants in that amount, plus $300 for attorney's fees. Both parties moved for reconsideration, appellees as to the amount. The trial court denied appellants' motion for reconsideration and proceeded to amend a part of its findings of fact and to increase the amount of the damages to $5,500.

Appellants assign the commission of two errors by the trial court, consisting (1) in concluding as a matter of law, that the *Escuela* was negligent in the absence of evidence that it had direct or implied knowledge of the existence of water at the place where appellee fell, specially in making a *sui generis* application of the doctrine of *res ipsa loquitur*, and (2) in increasing the amount of compensation without justified cause.

There was no evidence in this case to the effect that the *Escuela* or its employees had thrown water at the scene of the accident in Clínica Pila nor that they had direct or implied knowledge of the fact that the floor was damp in said place. On the contrary, there was oral evidence that it had not rained before the accident; that the scene of the accident was washed only between eleven p.m. and one a.m., when there are no people coming and going, using for those purposes water from a hose only, a mop and a pail where the mop was wrung, that no accident like the one sustained by appellee had occurred before.

In cases of injuries sustained by visitors in commercial establishments, the rule of law which we have adopted is the following: the owner of the establishment is not an insurer

of the safety of business visitors. His duty extends only to the exercise of care for harm resulting from dangerous conditions unknown to him and which a reasonable inspection would not discover, conditions from which no unreasonable risk was to be anticipated. Likewise there is no obligation to protect the visitor against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be able to protect himself. The visitor, however, is not required, as in the case of a licensee, to be on the alert for possible defects. The mere fact that a visitor is injured on certain premises does not create a presumption of negligence. In order to recover, the injured visitor must establish that the owner of the premises has violated his obligation of exercising reasonable care. *Goose* v. *Hilton Hotels*, 79 P.R.R. 494, 498 (1956). The doctrine of *res ipsa loquitur* is not applicable in these cases. *Roberts* v. *Courville*, 162 So.2d 750 (La. App. 1964).[1] There is no doubt that appellee was a visitor in the establishment of the *Escuela* and that the latter was an establishment which furnished services to the public so that the rule in question is applicable to the circumstances of the case at bar. *Levine* v. *Hartford Accident & Indemnity Company*, 149 So.2d 433 (La. App. 1963).

In *Gutiérrez* v. *Bahr*, 78 P.R.R. 451 (1955), we imposed liability on the owner of an establishment for the injuries caused to a customer by a fan in the ceiling since the owner had knowledge of the danger of the apparatus according to his own testimony. In *Santaella* v. *Licari*, 83 P.R.R. 855 (1961), as well as in *Weber* v. *Mejías*, 85 P.R.R. 72 (1962), we imposed liability on the owner of a property for the injuries sustained by passersby, because the accidents were caused by an "unreasonable risk" (door which opens towards

---

[1] Prosser, Law of Torts 402, 3rd ed.; 2 Harper & James, The Law of Torts 1499, § 2714.

a corridor without protection for the persons who walk along the corridor), or "a hazardous situation" (an exposed stairway with no handrails, of narrow steps with the finish of the treads of totally polished and smooth concrete in the form of a bevel, slippery by reason of having been wet because of the rain and with an excessive inclination angle or inherently dangerous). The owner of a supermarket was held liable in *Viñas* v. *Pueblo Supermarket,* 86 P.R.R. 31 (1962), because the owner had knowledge of the situation consisting in the existence of water with grease on a sidewalk as a result of which the claimant slipped and was injured. We disallowed liability in *Torres* v. *Metropolitan School,* 91 P.R.R. 1 (1964), because at the scene of the accident the degree of risk which implies negligence did not exist. In *Deynes* v. *Texaco (P.R.), Inc.,* 92 P.R.R. 215 (1965), we held the owner of the commercial establishment liable for the injuries sustained by claimant upon stumbling against a battery which the owner of the business was charging in the alley along which claimant was passing to go to the rest room of the establishment.

In cases of injuries suffered by a visitor as a result of an accident in a commercial or service establishment due to a substance or material on the floor or passageway, in the great majority of the jurisdictions the rule of law is that the owner of the establishment is not liable unless the injured person proves that said owner or operator of the establishment, or one or more of his employees placed or dropped the substance or object on the floor or had knowledge of that fact, or that said situation prevailed for such length of time that the owner or operator or his employees had the opportunity to remove it and did not do it. Thus (1) in *Norman* v. *Tradehome Shoe Stores, Inc.,* 132 N.W.2d 745 (Minn. 1965), it was held that the owner of a shoe store was not liable for injuries sustained by a customer upon slipping on a piece of tissue paper on the floor, in the absence of proof

that the owner or his employees placed it or had knowledge thereof or that it was on the floor for such length of time as to justify the conclusion that defendant had constructive notice thereof; (2) in *Lexington Market Authority* v. *Zappala,* 197 A.2d 147 (Md. 1964), compensation was denied to a person who was injured upon slipping on a spot of oil or grease in a parking garage where she had parked her automobile, because of the absence of proof of action or actual or constructive knowledge on the part of the operator of the facilities, since it is not reasonable to hold that it was the latter's duty to continuously inspect and sand down such spots; (3) in *Lejeune* v. *Hartford Accident and Indemnity Co.,* 136 So.2d 157 (La. 1961), the court denied a claim for injuries sustained by claimant in tripping over a chair in an aisle of a store, in the absence of proof of the storekeeper's or his employees' action, or real or constructive knowledge; (4) in *Great Atlantic & Pacific Tea Company* v. *Giles,* 354 S.W.2d 410 (Texas 1962), liability of the owner of a grocery store for the injuries sustained by a customer upon slipping over a grape on the floor in front of the meat counter and away from the fruits, was disclaimed in the absence of the aforesaid evidence of action or knowledge on the part of the owner; (5) in *F. W. Woolworth* v. *Goldston,* 155 S.W.2d 830 (Texas 1941), it was held that the owner of a grocery store was not liable for the injuries sustained by a customer upon slipping on a banana peel on the floor of the establishment in the absence of proof that the owner or one of his employees would have dropped the peel on the floor or had direct or implied knowledge of its existence on the place where the injured slipped. *Colonial Stores Incorporated* v. *Pulley,* 125 S.E.2d 188 (Va. 1962); *Dowling* v. *F. W. Woolworth Co.,* 227 N.Y.S.2d 231 (N.Y. 1962); *Hampton* v. *Rowley,* 350 P.2d 151 (Utah 1960).

On the contrary, in *Dever* v. *George Theriot's, Inc.,* 159 So.2d 602 (La. 1964), the owner of a grocery store was held

liable for the injuries sustained by a customer upon slipping on some pieces of produce which employees of the establishment left on the floor; in *Henderson* v. *Westchester Fire Insurance Co.*, 161 So.2d 144 (La. 1964), a store owner was held liable for the injuries sustained by a customer when a bottle fell on her foot upon opening a refrigerator, because the evidence showed that the owner placed it there with knowledge that nothing kept it from sliding from the refrigerator when its door was opened; in *Vaughn* v. *National Tea Company*, 328 F.2d 128 (7th Cir. 1964), liability was imposed on the owner of a store because claimant slipped on a piece of lettuce, which showed by its dirty, decayed condition and by the fact that it had been stepped upon by other persons, that it had remained on the floor for such a long time that it was justified to charge the owner with implied knowledge of the situation. *Prudential Insurance Co. of America* v. *Wilkerson*, 327 F.2d 997 (5th Cir. 1964); *Safeway Stores, Inc.* v. *Dial*, 314 F.2d 33 (5th Cir. 1963). Because there was no evidence at all showing the length of time that some pieces of produce which caused the fall of claimants in different stores had remained on the floor, liability of the store owners was denied in *Mills* v. *Safeway Stores, Inc.*, 201 A.2d 20 (D.C. 1964); *Smith* v. *Great Atlantic and Pacific Tea Company*, 166 So.2d 322 (La. 1964); *Safeway Stores, Incorporated* v. *Feeback*, 390 P.2d 519 (Okla. 1964). In *Rogers* v. *Binkham*, 188 A.2d 821 (Pa. 1963), it was said that a store proprietor could not be held liable for the fall of a customer on the terrazo entrance way, wet from rain because that condition of itself is not such a dangerous condition as to constitute negligence. A like conclusion was reached by the court in *Asmussen* v. *New Golden Hotel Company*, 392 P.2d 49 (Nev. 1964), with respect to a fall on a waxed floor, in the absence of proof that the owner of the establishment (a hotel in this case)

was negligent in the selection or application of the materials he used for waxing the floor.

In *Levine, supra,* the state of facts is very similar to the one being considered in this case. In leaving a hospital where she was visiting a patient, a lady fell in the hallway which ends at the emergency entrance of the institution. She contended that she slipped in a pool of water; that the floor was wet. Her companion did not see the pool. Evidence was offered of the care used in keeping the floor of the hospital clean. Other witnesses of the defendant testified that there was no wet spot on the floor at the time of the accident. The court said that even assuming that there was water on the floor, no negligence on the part of the hospital was proved since there was no evidence that that situation was caused by any employee of the institution or that they had actual knowledge of the pool. The only evidence admitted shows that, if there was in fact a pool, it had not been there very long, for no one saw it and only the claimant was aware of it, so that the hospital could not be charged with constructive knowledge thereof. *Miller* v. *F. W. Woolworth Company,* 384 S.W.2d 947 (Ark. 1964). In *Fowler* v. *F. W. Woolworth Company,* 169 So.2d 754 (La. 1964), the court reached a conclusion contrary to that of *Levine, supra,* because the evidence established that the claimant slipped, fell, and was injured on a floor mopped with water and soap by an employee of the store who testified that the floor was damp and with sprinkles and he did not place any barricade or warning sign at the entrance to the aisle in question after mopping it, according to the instructions given him, as he had done in other aisles on the same occasion.

It is argued that the supervisor of the hospital in question, upon being asked whether or not it was true that the floor of the hospital had a very smooth surface and *to a certain point slippery,* answered yes, that the telephone operator of the hospital upon being asked whether or not

it was true that said floor at the time of the accident was very polished, smooth, that even when dry it was at times slippery, she answered "Well, it was"; that, therefore, that condition rendered the floor dangerous, especially in a hospital, this condition constituting an unreasonable risk, appellant having been negligent in tolerating that hazardous situation, for which reason what we held in *Weber, supra* is applicable.

The former conclusion does not lie. It relies on monosyllabic answers to questions posed to obtain such answers, without giving any consideration and weight to the remainder of the lengthy testimony of these witnesses. Appellee's theory and what she sought to establish was that her fall was due to the fact that she slipped because she stepped on water on the floor and not because the latter was smooth and slippery. This situation, of itself, had not created a dangerous condition known by or knowledge of which could be attributed to appellant, since that situation existed for many years and had caused two accidents only, the same day, on different places of the hospital and not because of the condition of the floor but because of the shoes.

The supervisor in question testified that after the accident she went to see the place where it occurred and found it dry and clean; that it had not rained; that in the Emergency Room where appellee was taken, the latter referred to her shoes as dangerous; that in the three years she has been working in the aforesaid hospital, only two persons have fallen, each one in different places, appellee being one of them, that on both occasions the injured admitted that they fell because of their shoes; that appellee told her: "I fell because the heels I am wearing are so thin that they slip"; that appellee's shoes did not show that they had stepped on water.

The aforementioned telephone operator testified that she saw appellee "going to the floor" (that is to say, at the moment she was falling); that she fell on the second step; that

she was on the edge of the stairway; that the place was clean and dry, it had not rained; "that the floor was polished, smooth and at times slippery even when dry, very polished, *as if to say now the terrazo corridor here*" referring to the floor of a hallway in the court. (Italics ours.)

It is evident that what the telephone operator's testimony, as a whole, establishes is that the floor was polished, *and at times slippery*, as is the condition of any terrazo floor and not as a dangerous condition typical and peculiar of the hospital's floor. The supervisor's testimony clearly shows that at the time of the accident the floor was dry and clean and not wet as appellee testified; that the latter admitted that she fell because "the heels of her shoes are so thin that they slip," and the condition of the floor was not dangerous for in three years only two persons fell within the premises of the hospital, in different places and because of the shoes they wore.

Without dispute, appellee sought to establish that she slipped on water for two reasons, that is to say (1) in order to make her case similar to that of *Weber, supra*; and (2) because the evidence in the sense that the floor was slippery, to the point of being dangerous was extremely weak and inaccurate since the two witnesses aforementioned only said on cross-examination that it was slippery "to a certain point" or "at times". On the other hand, the evidence was clear and final that the floor was not wet. There was no circumstance at all to justify any similarity between this case and that of *Weber, supra*.

In view of the foregoing we should have reversed the judgment rendered in this case and pronounced another dismissing the complaint.