PETRA FELICIANO, ETC., demandantes y recurridos, *v.* ES-
CUELA DE ENFERMERAS DE PUERTO RICO y THE TRAVELERS
ET AL., demandados y recurrentes.

*Número:* R-63-44      *Resuelto:* 19 de mayo de 1967

*F. Fernández Cuyar* y *Amancio Arias Cestero,* abogados de las
recurrentes; *Miguel A. Ruiz,* abogado de los recurridos.

PER CURIAM: Al salir de una visita a un paciente en
la Clínica Dr. Pila de Ponce, la recurrida Petra Feliciano
sufrió una caída que le causó una fractura en el codo izquierdo
y una incapacidad permanente de 15% de las funciones
fisiológicas de su brazo izquierdo. El tribunal de instancia
dictó originalmente sentencia declarando con lugar la demanda
y condenando a la parte demandada a satisfacer $2,500 por
concepto de daños y $300 de honorarios de abogado. La de-
mandada recurrente solicitó la reconsideración, la cual fue
declarada sin lugar, pero el tribunal *motu proprio* aumentó
la indemnización a $5,500.

La prueba presentada para sostener la reclamación esta-
bleció que la demandante fue a visitar un paciente a la Clínica
Dr. Pila de Ponce el 31 de enero de 1960 a la caída de la
tarde. Terminada la visita, al acercarse a la escalera para
salir, resbaló cuando fue a coger el pasamanos y cayó en el
primer escalón. La prueba, según determinación del juez sen-

536

tenciador, demostró que en el sitio donde ocurrió el accidente el piso estaba mojado. La prueba de la parte demandada negó este hecho pero sin embargo, estableció en el contrainterrogatorio que el piso es de superficie sumamente lisa y resbalosa aunque esté seco. (¹)

En este caso contrario a las circunstancias presentes en *Torres* v. *Metropolitan School*, 91 D.P.R. 1 (1964) la propia prueba de la demandada estableció que la superficie del piso era sumamente lisa y resbalosa aunque estuviera seco, lo que evidentemente lo hacía peligroso, especialmente en un hospital, constituyendo esta condición un riesgo indebido. Al igual que en *Viñas* v. *Pueblo Supermarket*, 86 D.P.R. 33 (1962), la parte demandada fue negligente al tolerar una situación peligrosa. Ciertamente es de aplicación, ajustado a los hechos de este caso, lo que expresamos en *Weber* v. *Mejías*, 85 D.P.R. 76–80 (1961):

". . . El propietario tenía la obligación de prever esta contingencia que creaba una situación de peligro bajo determinadas circunstancias. Cfr. *Baralt et al.* v. *Estado Libre Asociado*, 83 D.P.R. 277 (1961). Su responsabilidad está predicada en la falta de previsibilidad y no se libera de ella porque la construcción sea común y corriente en esta localidad. Indicamos de paso que una superficie puede tener apariencia de estar pulida y no ser intrínsecamente resbaladiza cuando en su construcción se emplean ciertos materiales abrasivos que impidan tal condición. En

---

(¹) La testigo Francisca Pérez de Lluberas, Supervisora General de la Clínica Dr. Pila al ser contrainterrogada afirmó:

"P Dígame, ¿es o no cierto que el piso de esa clínica es de superficie sumamente lisa y hasta cierto punto resbalosa aunque esté seco?

R Sí, señor.

P ¿Eso es así? ¿Tiene dudas?

R No tengo dudas." (T.E. pág. 61.)

La testigo Gloria Rodríguez de Jesús, telefonista entonces de la Clínica Dr. Pila, al ser contrainterrogada afirmó:

"P Es o no cierto, joven, que el piso de esa clínica era para esa época un piso sumamente pulido, liso, que aún estando seco era a veces resbaladizo?

R Bueno, era." (T.E. pág. 72.)

el presente caso no se presentó prueba alguna a este efecto, y por tanto, sólo podemos considerar el hecho de que los escalones se tornaban resbaladizos cuando se mojaban debido a su terminación pulida. Bajo las circunstancias concurrentes de este caso creemos que la causa eficiente del accidente fue mantener una escalera con escalones pulidos y que por estar a la intemperie se tornaban resbaladizos al mojarse. El propietario incurrió en falta al omitir prever las consecuencias que esto produciría."

Ver además, *Sarsfield* v. *St. Mary Hospital*, 129 N.W.2d 306, 308 (Minn. 1964); cf. *Doctor's Hospital* v. *Badgley*, 156 F.2d 569 (D.C. Cir. 1946).

Examinados los autos no encontramos justificación alguna para el aumento de la compensación originalmente concedida.

*Se modificará la sentencia para limitar la compensación a $2,500. Así modificada, se confirma.*

El Juez Asociado Señor Ramírez Bages disintió en opinión separada en la cual concurren les Jueces Asociados Señores Pérez Pimentel, Blanco Lugo y Rigau.

—O—

Opinión disidente emitida por el Juez Asociado Señor Ramírez Bages con la cual concurren los Jueces Asociados Señores Pérez Pimentel, Blanco Lugo y Rigau

San Juan, Puerto Rico, a 19 de mayo de 1967

Disiento del dictamen de la mayoría por creer que debimos revocar la sentencia en este caso que responsabiliza a las recurrentes por las lesiones recibidas por la Sra. Petra Feliciano al sufrir una caída al salir de la Clínica Pila en Ponce. No se probó que (1) la recurrente, Escuela de Enfermeras de Puerto Rico, en lo sucesivo designada como la Escuela, tenía conocimiento directo o implícito de que hubiese agua en el piso, en el lugar en que la señora Feliciano resbaló y cayó, o de

que alguien relacionada con la Escuela la echase en el lugar del accidente, o que (2) existiese en el lugar del accidente una situación de peligrosidad creada o conocida por la Escuela y que tal situación ocasionó el accidente en cuestión.

De las conclusiones de hecho y de derecho del Tribunal Superior, Sala de Ponce, de 26 de septiembre de 1962, resulta que: (1) la recurrida, Petra Feliciano, sufrió una caída al dirigirse a la escalera de salida de la Clínica Pila; (2) dicha clínica es operada por la Escuela, la que tenía en vigor una póliza de responsabilidad pública expedida por The Travelers Indemnity Company; (3) la referida caída, que le ocasionó una fractura del codo izquierdo con motivo de lo cual sufre la recurrida una incapacidad parcial permanente de un 15% de las funciones fisiológicas del brazo izquierdo, se debió a que al tomar el pasamanos de la escalera, la señora Feliciano resbaló y se cayó; (4) donde cayó el piso estaba mojado, situación que ella no notó debido a lo brilloso que estaba; (5) el piso allí es de losetas blancas con rayas grises y tiene un color oscuro, bien liso y resbaloso aun estando seco; (6) debido a la hora, seis de la tarde del 31 de enero de 1960, había poca luz fuera; (7) la única causa del accidente fue la negligencia de los empleados de la Escuela al permitir la presencia de agua en el sitio donde ocurrió el accidente; (8) las lesiones y sufrimientos físicos de la recurrida se estiman en $2,500. Se dictó sentencia a favor de los recurridos y en contra de los recurrentes por dicha suma, más $300 de honorarios de abogado. Solicitaron ambas partes la reconsideración de la misma, los recurridos en cuanto a la cuantía. El tribunal sentenciador denegó la reconsideración de los recurrentes y procedió a enmendar una parte de sus conclusiones de hecho y a aumentar la cuantía de los daños a la suma de $5,500.

Señalan los recurrentes la comisión por el tribunal sentenciador de dos errores, consistentes (1) en concluir como cuestión de derecho, que la Escuela fue negligente en ausencia de prueba de que tuviese conocimiento directo o im-

plícito de la existencia de agua en el lugar donde cayó la recurrida, especialmente al hacer una aplicación *sui generis* de la doctrina *res ipsa loquitur*, y (2) al aumentar la cuantía de la indemnización sin causa justificada.

No hubo prueba alguna en este caso al efecto de que la Escuela o sus empleados hubieran echado agua en el lugar del accidente en la Clínica Pila ni de que tuvieran conocimiento directo o implícito de que el piso estaba húmedo en dicho lugar. Por el contrario, hubo prueba testifical de que no había llovido antes del accidente; de que el lugar del accidente sólo se lavaba entre las once y la una de la noche, cuando no hay movimiento de gente, usándose a esos efectos únicamente agua obtenida de una manguera, aljofifa (mapo) y un balde en el cual aquél se exprimía; que antes no había ocurrido accidente como el que sufrió la recurrida.

En casos de lesiones sufridas por visitantes en establecimientos comerciales, la regla de derecho que hemos adoptado es la siguiente: el dueño del establecimiento no es un asegurador de la seguridad de los clientes del negocio. Su deber sólo se extiende al ejercicio del cuidado por lesiones resultantes de condiciones peligrosas que desconoce y que una inspección razonable no descubriría condiciones de las cuales no se anticiparía un riesgo no razonable. De igual manera no hay deber de proteger al visitante contra peligros que le son conocidos o que son tan aparentes que puede razonablemente esperarse que los descubra y se pueda proteger. El visitante, sin embargo, no viene obligado, como en el caso del concesionario (*licensee*) a estar a la expectativa para descubrir posibles defectos. El mero hecho de que un visitante se lesione en un local no crea una presunción de negligencia. A fin de recobrar, el visitante lesionado tiene que probar que el dueño del local ha violado su obligación de ejercer un cuidado razonable. *Goose* v. *Hilton Hotels*, 79 D.P.R. 523, 527–528 (1956). La doctrina de *res ipsa loquitur* no

540

se aplica en estos casos. *Roberts* v. *Courville*, 162 So.2d 750 (La. App. 1964).(¹) Na hay duda de que la recurrida era una visitante en el establecimiento de la Escuela y que éste era un establecimiento que proveía servicios al público de manera que la regla en cuestión es de aplicación a las circunstancias del caso que nos ocupa. *Levine* v. *Hartford Accident & Indemnity Company*, 149 So.2d 433 (La. App. 1963).

En *Gutiérrez* v. *Bahr*, 78 D.P.R. 473 (1955), impusimos responsabilidad al dueño de un establecimiento por las lesiones ocasionadas a un cliente por un abanico en el plafón, pues el dueño tenía conocimiento de la peligrosidad del artefacto de acuerdo con su propia declaración. Tanto en *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961), como en *Weber* v. *Mejías*, 85 D.P.R. 76 (1962), impusimos responsabilidad al dueño de una propiedad por las lesiones sufridas por transeúntes, debido a que los accidentes fueron ocasionados por "un riesgo indebido" (puerta que se abre hacia un pasillo sin protección para las personas que discurren por el pasillo), o "una situación de peligro" (escalera exterior sin pasamanos, de peldaños estrechos con la terminación de la huella en hormigón totalmente pulido y liso en forma de chaflán, resbaladizo con motivo de haberse mojado por lluvia y con ángulo de inclinación excesivo o inherentemente peligroso). Impusimos responsabilidad al dueño de un supermercado, en *Viñas* v. *Pueblo Supermarket*, 86 D.P.R. 33 (1962), porque dicho dueño tenía conocimiento de la situación consistente en la existencia de agua con grasa en una acera por motivo de lo cual la reclamante resbaló y se lesionó. La negamos en *Torres* v. *Metropolitan School*, 91 D.P.R. 1 (1964), porque no existía en el lugar del accidente el grado de peligrosidad que implica negligencia. En *Deynes* v. *Texaco P.R. Inc.*, 92 D.P.R. 222 (1965), responsabilizamos al dueño del establecimiento

_____

(¹) Prosser, *Law of Torts*, 3rd ed., pág. 402; 2 Harper & James, *The Law of Torts*, pág. 1499, sec. 2714.

comercial por las lesiones que sufriera el reclamante al tropezar con una batería que el dueño del negocio estaba cargando en el pasillo por donde se dirigía el reclamante al cuarto de baño del establecimiento.

En casos de lesiones sufridas por un visitante como consecuencia de un accidente en un establecimiento comercial o de servicio debido a una substancia o material en el piso o en un pasillo, en la gran mayoría de las jurisdicciones la regla de derecho es que el dueño del establecimiento no es responsable a menos que el lesionado pruebe que dicho dueño u operador del establecimiento o uno o más de sus empleados colocaron o dejaron caer la substancia u objeto al piso o tenían conocimiento de ese hecho o que dicha situación prevaleció por un período de tiempo tal que el dueño u operador o sus empleados tuvieron oportunidad de removerlo y no lo hicieron. Así (1) en *Norman* v. *Tradehome Shoe Stores Inc.*, 132 N.W.2d 745 (Minn. 1965), se resolvió que el dueño de una tienda de zapatos no era responsable de las lesiones sufridas por una cliente al resbalar sobre un pedazo de papel de seda en el piso, en ausencia de prueba de que el dueño o sus empleados lo colocaron o tenían conocimiento del mismo o de que estuvo en el suelo un período de tiempo de tal duración que justificara concluir que el demandado tuvo conocimiento implícito del mismo; (2) en *Lexington Market Authority* v. *Zappala*, 197 A.2d 147 (Md. 1964), se negó compensación a una persona que se lesionó al resbalar en una mancha de aceite o grasa en un edificio del aparcamiento de vehículos, en donde había estacionado su automóvil, debido a la ausencia de prueba de actuación o conocimiento del operador de esa facilidad, ya que no es razonable presumir que era la obligación de éste inspeccionar continuamente y cubrir con arena tales manchas; (3) en *Lejeune* v. *Hartford Accident and Indemnity Company*, 136 So.2d 157 (La. 1961), el tribunal denegó una reclamación por lesiones ocasionadas al tropezar la reclamante con una silla en un pasillo de una tienda, en ausencia de prueba de

actuación o conocimiento expreso o implícito del dueño del establecimiento o sus empleados; (4) en *Great Atlantic & Pacific Tea Company* v. *Giles*, 354 S.W.2d 410 (Tex. 1962), se negó la responsabilidad del dueño de una tienda de comestibles por las lesiones sufridas por un cliente al resbalar sobre una uva que estaba en el piso frente al mostrador de carnes y lejos de las frutas, en ausencia de la referida evidencia de actuación o conocimiento del dueño; (5) en *F. W. Woolworth* v. *Goldston*, 155 S.W.2d 830 (Tex. 1941), se resolvió que el dueño de una tienda de comestibles no era responsable por las lesiones sufridas por un cliente al resbalar en una cáscara de guineo en el piso del establecimiento en ausencia de prueba de que el dueño o uno de sus empleados hubiese dejado caer la cáscara al piso o de que tuviese conocimiento directo o implícito de su existencia en el lugar en que resbaló la lesionada. *Colonial Stores Incorporated* v. *Pulley*, 125 S.E.2d 188 (Va. 1962); *Dowling* v. *F. W. Woolworth Co.*, 227 N.Y.S.2d 231 (N.Y. 1962); *Hampton* v. *Rowley*, 350 P.2d 151 (Utah 1960).

Por el contrario, en *Dever* v. *George Theriot's Inc.*, 159 So.2d 602 (La. 1964), se responsabilizó al dueño de una tienda de comestibles por lesiones sufridas por un cliente al resbalar sobre pequeños pedazos de productos agrícolas que los empleados del establecimiento dejaron en el piso; en *Henderson* v. *Westchester Fire Insurance Co.*, 161 So.2d 144 (La. 1964), se responsabilizó al dueño de una tienda por las lesiones que sufrió una cliente al caerle en un pie una botella al abrir una nevera, pues la prueba demostró que el dueño la colocó allí teniendo conocimiento de que nada impedía que se deslizase de la nevera al abrirse la puerta de ésta; en *Vaughn* v. *National Tea Company*, 328 F.2d 128 (7th Cir. 1964), se le impuso responsabilidad al dueño de una tienda porque la reclamante resbaló sobre un pedazo de lechuga, el cual demostraba, por su estado de suciedad, podredumbre y por el hecho de que otros la habían pisado, que hacía tanto

tiempo que estaba en el piso que se justificaba imputarle al dueño conocimiento implícito de la situación. *Prudential Insurance Company of America* v. *Wilkerson*, 327 F.2d 997 (5th Cir. 1964) ; *Safeway Stores, Inc.* v. *Dial*, 314 F.2d 33 (5th Cir. 1963). Debido a que no hubo prueba alguna demostrativa del tiempo que estuvieron en el piso ciertos pedazos de productos agrícolas que motivaron la caída de los reclamantes en distintas tiendas, se denegó la responsabilidad de los dueños de las distintas tiendas en *Mills* v. *Safeway Stores, Inc.*, 201 A.2d 20 (D.C. 1964) ; *Smith* v. *Great Atlantic and Pacific Tea Company*, 166 So.2d 322 (La. 1964) ; *Safeway Stores, Incorporated* v. *Feeback*, 390 P.2d 519 (Okla. 1964). En *Rogers* v. *Binkham*, 188 A.2d 821 (Pa. 1963), se dijo que no se podía responsabilizar al dueño de una tienda por la caída de un cliente en la entrada de terrazo mojada por lluvia porque esa condición de por sí no es una condición peligrosa que constituya negligencia. A igual conclusión llegó el tribunal en *Asmussen* v. *New Golden Hotel Company*, 392 P.2d 49 (Nev. 1964), con respecto a una caída en un piso encerado, en ausencia de prueba de que el dueño del establecimiento (un hotel en este caso) fue negligente en la selección o aplicación de los materiales que usó al encerar el piso.

En *Levine*, supra, la situación de hechos es muy parecida a la que venimos considerando en este caso. Al salir de visitar un paciente en un hospital, una señora se cayó en el pasillo que desembocaba en la entrada de emergencia de la institución. Sostuvo que resbaló en un charco de agua; que el piso estaba mojado. Su acompañante no vio el charco. Se ofreció prueba del cuidado con que el hospital mantenía sus pisos. Otros testigos de la demandada declararon que no había espacio mojado en el piso en el momento del accidente. Dijo el tribunal que aun asumiendo que había agua en el piso, no se probó la negligencia del hospital, pues no hubo prueba de que esa situación la causó empleado alguno de la institución o de que tenían conocimiento del charco. La única evidencia admitida

indica que, si en efecto existió el charco, no lo fue por mucho tiempo, pues nadie lo vio y sólo la reclamante se percató del mismo, de manera que no se podía imputar conocimiento implícito del mismo al hospital. *Miller* v. *F. W. Woolworth Company*, 384 S.W.2d 947 (Ark. 1964). En *Fowler* v. *F. W. Woolworth Company*, 169 So.2d 754 (La. 1964), el tribunal llegó a una conclusión contraria a la del caso de *Levine*, supra, porque la prueba demostró que la reclamante resbaló, se cayó y se lesionó en un piso recién lavado con agua y jabón, por un empleado de la tienda quien testificó que el piso quedó húmedo y salpicado y él no colocó barreras y avisos a la entrada del pasillo en cuestión luego de lavarlo, de acuerdo con sus instrucciones, como lo había hecho en el caso de otros pasillos en la misma ocasión.

Se arguye que la supervisora de la clínica en cuestión al preguntársele si era o no cierto que el piso de la clínica era de superficie sumamente lisa y *hasta cierto punto resbaloso*, contestó que sí; que la telefonista de la clínica al preguntársele si era o no cierto que dicho piso era para la época del accidente un piso sumamente pulido, liso, que aun estando seco era a veces resbaladizo, contestó "Bueno era"; que, por lo tanto, esa condición hacía que el piso fuese peligroso, especialmente en un hospital, constituyendo esta condición un riesgo indebido, habiendo sido la recurrente negligente al tolerar esa situación de peligrosidad, por lo que aplica lo que expresamos en *Weber*, supra.

La anterior conclusión es improcedente. Se basa en contestaciones monosilábicas a preguntas dirigidas a obtener tales contestaciones, sin dar consideración y peso alguno al resto del extenso testimonio de estos testigos. La teoría de la recurrida y lo que trató de probar fue que su caída se debió a que resbaló por haber pisado en agua en el piso y no porque éste fuese liso y resbaloso. Esta situación, de por sí, no había creado una condición de peligrosidad conocida de o de conocimiento atribuible a la recurrente, ya que esa situa-

ción existió por muchos años y no ocasionó nada más que dos accidentes, el mismo día, en diferentes sitios del hospital y no debido a la condición de los pisos sino a la de los zapatos.

La supervisora en cuestión testificó que luego del accidente fue a ver el sitio en que ocurrió y lo encontró seco y limpio; que no había llovido; que en la Sala de Emergencia a donde fue llevada la recurrida, ésta se refirió a sus zapatos como muy peligrosos; que en los tres años que lleva trabajando en el referido hospital sólo se han caído dos personas cada una en distintos sitios, siendo una de ellas la recurrida; que en ambas ocasiones las lesionadas le admitieron que se cayeron debido a los zapatos; que la recurrida le dijo: "Me caí porque los tacos que llevo son tan finos que resbalan"; que los zapatos de la recurrida no tenían muestra de haber pisado en agua.

La telefonista antes mencionada declaró que vio a la recurrida "que iba para el piso" (es decir, en el momento que se caía); que se cayó en el segundo escalón; que estaba en la orillita de la escalera; que el sitio estaba limpio y seco, no había llovido; "que el piso era pulido, liso y a veces resbaladizo aun estando seco, muy pulido, *como decir ahora el pasillo de aquí de terrazo*" refiriéndose al piso de un pasillo en el tribunal. (Énfasis nuestro.)

Es evidente que el testimonio de la telefonista en conjunto, todo lo que prueba es que el piso era pulido, *a veces resbaladizo*, como es condición de todo piso de terrazo y no como una condición de peligrosidad típica y peculiar del piso de la clínica. La declaración de la supervisora claramente demuestra que en el momento del accidente el piso estaba seco y limpio y no mojado como testificó la recurrida; que ésta admitió que se cayó porque "los tacos de sus zapatos son tan finos que resbalan" y la condición del piso no era peligrosa pues en tres años sólo se cayeron dos personas en la clínica, en distintos sitios y debido a los zapatos que usaban.

546

Indudablemente, la recurrida trató de probar que resbaló en agua por dos razones, es decir (1) para tratar de asemejar su caso al de *Weber*, supra; y (2) porque la prueba de estar el piso resbaladizo, al extremo de constituirse en peligroso era sumamente débil e imprecisa ya que los dos testigos antes mencionados sólo dijeron en contrainterrogatorio que era resbaladizo "hasta cierto punto" o "a veces". Por otra parte, la prueba fue clara y firme de que el piso no estaba mojado. No hubo circunstancia alguna que justifique asemejar este caso al de *Weber*, supra.

En vista de lo expuesto, hemos debido revocar la sentencia dictada en este caso y dictar otra declarando la demanda sin lugar.